JACKSON
v.
LEWIS.
Testimony to impeach the credit of a witness, by showing that she either was, or had been, a common prostitute, is inadmissible.

Where *A.* and *B.* were subscribing witnesses to a deed, both of whom were dead at the time of trial, and the hand-writing of *A.* was proved, and also that he had signed the name of *B.*, and there were two acknowledgments upon the deed, one of which stated that he and *B.* both signed as witnesses, and the other, and later acknowledgment, stated, that *A.* had signed the name of *B.* in his presence, and at his request; it was held that there was sufficient proof of the execution of the deed, and that the first certificate could only go to impeach the credit of *A.*, which was matter for the jury, on the question, whether the grantor had executed the deed or not; but that the reasonable supposition was, that the officer had made a mistake in the form of the certificate.

By the 8th section of the act *to settle disputes concerning the titles to lands in the county of Onondaga.* infants have three years after their coming of age in which to file their dissent, and are not, like adults, labouring under no disability, restricted to two years, but after filing

## JACKSON, *ex dem.* BOYD, *against* LEWIS.

THIS was an action of ejectment, brought to recover lot No. 94., in the town of *Brutus*, now *Mentz*, in the county of *Cayuga*, in the *military* tract. The cause was tried before Mr. Justice *Yates*, at the last *June* circuit, in the county of *Cayuga*.

Both parties derived their title from *Bevins* a soldier; and the plaintiff produced a deed from *Bevins* to *Benjamin Wallace*, dated the 2d of *March*, 1796, which was duly acknowledged on the day of the date, and recorded in the clerk's office of the county in which the land then lay, on the 21st of *April*, 1796. He also produced an award of the *Onondaga* commissioners, dated the 29th of *August*, 1798, by which the premises were awarded to *Wallace*; also, a deed from *Wallace* and his wife, to the lessor of the plaintiff, which was duly acknowledged on the 4th of *October* in the same year, and recorded in the clerk's office of the county of *Cayuga*, on the 12th of *May*, 1806.

The defendant produced in evidence a deed from *Bevins* to *Henry Hart*, dated the 9th of *March*, 1784, in which a consideration of ten pounds was expressed, and the subscribing witnesses to which were *Anthony B. Bradt* and *Reyner Visger*, both of whom were dead at the time of the trial. The signature of the grantor consisted merely of a mark. This deed was duly deposited in the proper office, at that time, for depositing deeds relating to the military lands, on the 25th of *April*, 1795. The hand-writing of *Visger*, one of the subscribing witnesses, was proved by two witnesses, who were of opinion, that the name of *Bradt*, the other subscribing witness, was in the hand-writing of *Visger*. The declarations of *Bevins*, that he had sold the land to *Hart*, and had received in payment a hat, a vest pattern, and a plug of tobacco, were proved by two witnesses; the credit of one of whom, *Catharine Bassett*, the plaintiff offered to impeach, by proving that in her younger days she had been a public prostitute, but the evidence was overruled by the court. *Herman Vischer Hart* was the heir at law of *Henry Hart*, now deceased. He was born on the 7th of *September*, 1784, and on the 7th of *March*, 1808, filed his dissent to the award of the commissioners in favour of *Wallace*. The plain-

their dissent they are to give notice to the commissioners, to commence a suit within three years; &c. according to the directions of the third section of the statute. (*1 N. R. L.* 213, 215.)

tiff's counsel objected to the dissent being given in evidence, on the ground that it had not been filed within two years after *Herman V. Hart* came of age, but the judge decided that it was filed in time. The defendant was in possession of the premises, by virtue of an agreement with *H. V. Hart* for the purchase of the land.

Upon the deed from *Bevins* to *Henry Hart*, two acknowledgments were endorsed, one of which was taken before *Henry Oothout*, a judge of the common pleas of the county of *Albany*, on the 19th of *April*, 1785, and stated, that *Visger*, appearing before him, and being sworn, said, that he saw *Bevins* execute and deliver the instrument, and that "*Anthony B. Bradt*, the other subscribing witness, was present, and did, together with the deponent, sign his name as witness to the execution thereof." The other was taken before *Jeremiah Lansing*, master in chancery, on the 2d of *December*, 1794, which stated, that *Visger* deposed before him, "that he saw *John Bevins* sign his name, by making his mark, and that he sealed and delivered the same for the purposes therein mentioned, and that he, the deponent, also subscribed the name of *Anthony B. Bradt* as witness, for, and by order of, the said *Anthony*, who was present."

The plaintiff's counsel, on the trial, objected to the deed being admitted in evidence, but the judge overruled the objection, and charged the jury, that the only question for their consideration was, whether *Bevins* executed the deed to *Hart*; and told them, that the only reasonable construction which they could put upon the acknowledgments was, that the inaccuracies in them were made by mistake. The jury accordingly found a verdict for the defendant, which the plaintiff now moved to have set aside, and a new trial granted. The cause was submitted to the court without argument.

THOMPSON, Ch. J., delivered the opinion of the court. 1. There can be no doubt, that the evidence offered to impeach the character of *Catharine Bassett* was inadmissible. It would not be competent to prove, that she was now a public prostitute, and, much less, to inquire whether she was so in her younger days; the inquiry should have been as to her character for truth and veracity. At all events, this should have been the principal and first inquiry; but that was not attempted; the in-

NEWYORK, quiry as to any particular immoral conduct is not admissible
October, 1816. against a witness.

JACKSON
v.
LEWIS.

2. The deed from *Bevins*, the soldier, to *Hart*, was sufficiently
proved, to go to the jury. The witnesses were both dead, and
the hand-writing of *Visger*, one of the witnesses, was fully proved,
and the testimony very satisfactorily shows, that the name of
*Bradt*, the other subscribing witness, was written by *Visger*;
this did not vitiate the deed. One witness was enough; the
certificate of proof endorsed by Judge *Oothout*, by which it
would appear that *Visger* swore that *Bradt* signed his name as
a witness, could, at all events, only go to impeach the credit of
*Visger*; this was matter for the jury, and came within their
province, by the submision of the judge to them of the question,
whether *Bevins* executed the deed or not. But it ought not
even to be considered as impeaching *Visger's* character; for
the reasonable solution was, as the judge told the jury, that it
was the mistake of the officer in the form of the certificate.

3. The principal question in the case, however, is as to
the dissent, whether *Herman Vischer Hart* had three years
after he arrived to the age of 21 to enter such dissent, or
only *two* years. If the dissent was not duly entered, the
award, in favour of the title under which the lessor of the
plaintiff claims, was established, and became conclusive by the
award of the *Onondaga* commissioners. But, with respect to
the time which *Hart* had to enter his dissent; I cannot see how
any doubt can exist: it must depend upon the construction to
be given to the act; and whether this act be reasonable and
just, or founded upon sound policy or not, we are not at liberty
to inquire. If it can receive but one interpretation, we are
bound to give that to it. By the third section (1 *N. R. L.* 213.)
the award is declared conclusive after the expiration of *two years*
from the making thereof, unless a dissent shall be entered, and
notice thereof given to the commissioners, or filed in the clerk's
office of *Onondaga* county, and unless the person dissenting,
if not in the actual possession, shall, within *three* years, com-
mence a suit at law or in equity, to recover the lands, or esta-
blish his right to the same, and prosecute such suit to effect.
But the 8th section contains a proviso, that neither this act, nor
any thing therein contained, shall extend, or be construed to
the prejudice of any persons under the age of 21 years, if such
persons shall, within *three* years after coming to the age of 21

years, make their dissent, and bring their suit, and prosecute the same to effect, as aforesaid. No reasonable construction can be given to this proviso, without considering it as extending the time for entering the dissent, in case of infant claimants, to *three* years, instead of two, as is required by the third section, in case of adults. Upon any other interpretation, the word *three*, in the proviso, must be rejected entirely. The legislature had, undoubtedly, a right to extend the time in favour of infants, if they thought proper, and, indeed, it would seem very reasonable that it should be so done. Two years, in any case, is but a short period for entering a dissent; and the peculiar situation of the titles to the military land, only would, perhaps, justify the statute at all. But, considering the time for entering the dissent, in cases coming within the proviso, as extended to three years, then this proviso, and every part of it, is in perfect harmony with the third section. For every thing to be done, after entering the dissent, by persons coming within the proviso, they are referred to, and are to be governed by, the provisions of the third section. But to reject an explicit provision, because reference is made to other parts of the act, for matters not expressly defined, would be against all sound rules of interpretation. The 8th section expressly provides as to the *time* within which the dissent is to be entered; but it is not pointed out how this dissent is to be entered, or within what time, or where the suit is to be brought. The concluding words of the 8th section, "*as aforesaid*," refer to these objects, namely, *make the dissent*, as aforesaid, that is, by giving notice thereof to the commissioners, or by filing the same in the office of the clerk of *Onondaga* county, *and bring the suit*, as aforesaid, that is, within three years, *and prosecute the same to effect*, as aforesaid, that is, a suit either at law or in equity, to recover the land, or establish their title to the same. This is the plain and natural interpretation of the statute, and the one adopted by this court, in the case of *Jackson* v. *M'Kee*, (8 *Johns. Rep.* 429.,) although this point was not the one then directly before the court. The motion for a new trial must, accordingly, be denied.

Motion denied.