## GILBERT *vs.* SHELDON.

Proof of a witness' general bad character, as that term is generally under-
stood, and used, in society, does not *necessarily* and legally prove the fact
that his character for veracity is bad.

Such proof is therefore immaterial evidence, where the party avows his inten-
tion to stop with that inquiry; without asking the impeaching witness the
further question whether he, from his knowledge of the witness' general
character, would believe him on oath, or whether his character for truth is bad.

Further questions must be put, in order to render the impeachment effectual.

MOTION for a new trial. The opinion of the court states the.
question upon which the motion was founded.

*By the Court,* SHANKLAND, J. The question raised upon
the trial, and decided by the justice who presided, is, whether
an impeaching witness may be asked *" if the general character
of another witness, is bad,"* when the counsel avows his inten-
tion to stop there, without asking the further question, whether
he, from his knowledge of his general character, would believe
him on oath, or whether his character for truth is bad. The
court held on the trial at the circuit, that it was not enough, to
impeach a witness, *to prove his general character bad,* but the
party must go further, and prove either that his character is bad
for truth, or that on account of his general bad character he ought
not to be believed on his oath.

I had supposed this question to be exceedingly well settled
in this state, and in the English courts, and on a full examina-
tion of all the authorities am confirmed in that opinion. The
cases cited by the appellant's counsel to support the position
that you may stop with the question as to general character, are
*Beekman* v. *Rose,* (18 *Wend.* 146 ;) *The Fulton Bank* v. *Bene-
dict,* (1 *Hall's Sup. Ct. Rep.* 558 ;) *Johnson* v. *The People,*
(3 *Hill,* 178 ;) *Jackson* v. *Osborn,* (2 *Wend.* 558 ;) and *Cowen
& Hill's Notes,* 764, 768, 769. But none of these cases decide
any such proposition, but are expressly contrary thereto. The
question, in *Beekman* v. *Rose,* was, whether you can impeach a
witness, by proving by *reputation that she is a public prosti-
tute.* The chancellor and Senator Tracy, both give opinions in

the negative; and in discussing the question to be put to the impeaching witness, agree that it is, "*what is his general character for truth and veracity ; or whether his general moral character is such, that he is not entitled to credit.*" Senator Tracy gives the form of question, to be used, as laid down in Phillipps, Starkie, and Swift; and prefers that of Phillipps, which is, "*whether they have the means of knowing the general character of the witness, and whether, from such knowledge, they would believe him, on oath.*" The other writers above mentioned, give the form of the question, substantially, in the same language. Where the senator adds, in the same opinion, "the credibility of the witness is to be sought through his general moral character," he does not mean, that the question may be put in that limited form; but the context shows his meaning to be, that the witness cannot be impeached, by showing by reputation, that he has been guilty of any particular crime, or vice ; for he says, at page 153, "if the mode of impeaching her credibility had been to inquire of the witnesses, first, as to their knowledge of her general moral character, and then, whether from such knowledge they would believe her upon her oath," her character might have been effectually impeached. The whole case is in direct accordance with the decision of the justice at the trial, in this cause

The case of *Johnson* v. *The People,* has no bearing on this question. There the witness *knew the general character* of the former witness, but knew nothing of *his character for truth and veracity.* The witness was then asked, "*whether, from his knowledge of the former witness' general character, he would believe him on oath ?*" This, was disallowed ; and the court say "acquaintance with *general character* is enough to warrant the *usual inquiry, whether, from that general character the witness would believe the person sought to be impeached, on oath.*" It is not essential, for this purpose, that the character of the latter for *truth and veracity,* should be known to the witness." It will be seen, by the above case, that the very question was put, that was required to be put, in the case at bar. Although a witness may not know another's character for truth, yet he may

well know, that from his general bad reputation, he is not worthy of belief.   This authority, is against the appellant.

*The Fulton Bank* v. *Benedict*, presented the question, whether the impeaching witness could speak from *his own knowledge* of the former witness, as well as from his general character.   (*See p.* 493.)   The judge decided he could not, and his decision was sustained.   The court say, (at page 506,) "The rules of evidence, on this point, are too well established to be overturned to meet the convenience of a particular suitor.   The question is, " *What is the general character of the witness for truth and veracity?*"   This case is, also, an authority against the appellant, upon the form of the question to be put.

In *Jackson* v. *Osborn*, a witness to a deed was attempted to be impeached, by proving he had been *twice indicted ;* but the evidence was rejected, and the court say, in reference to the proof, "The credibility of a witness is not to be impeached by proof of a particular offense, but by evidence of general bad character."   The court did not prescribe what the question should be, in such cases, but only that the proof of a particular offense was not admissible to impeach.

It seems, that in Kentucky, you may impeach a witness by *showing a want of chastity ;* (5 *Monroe's R.* 363, 365 ;) and you may there inquire for general character, in point of veracity. (3 *Bibb*, 268.)   Nor is the question confined to this ; you may ask what is the general character of the witness.   (3 *Bibb*, 268. 1 *Monroe*, 195.   3 *Marshall*, 260.)   But the supreme court held otherwise, in *Mobly* v. *Hammit*, (1 *Marshall*, 591.)   But, in all the above cases it is quite evident, that although you may ask the general question, in the first instance, you must afterwards ask the other questions as prescribed in Phillipps and other treatises.   (*See Cowen & Hill's Notes*, 769.)

The court, in *The People* v. *Mather*, (4 *Wend.* 457, 458,) adopts the questions prescribed by Starkie and Phillipps, and says : " the rule which, every thing considered, has been found safest, on this subject is, to allow general evidence to be given of general character."   The context, and subject matter show, that by " *general evidence of general character*," the court

meant, not what was the general character of the witness, but the general character as called out and followed up by the form of questions, which they adopt from Phillipps and Starkie.

The rule in our courts has never been departed from, that you must ask the additional questions in some form, after the witness has deposed to the general bad character of the former witness.

In the United States courts, it was held, that in order to impeach a witness, it is not competent to prove general bad character disconnected with veracity. ( *United States* v. *Vansickle*, 2 *McLean*, 219. See also *Phillips* v. *Kingsland*, 1 *App*. 375.)

In Tennessee, it is held that the general reputation of a witness, as connected with his credibility, in a court of justice, is the estimate his neighbors place upon his veracity; and an impeaching witness must state whether he knows the general reputation of the person in question; what that reputation is, and whether, from his knowledge of such reputation, he would believe him in a court of justice. (*Ford* v. *Ford*, 7 *Humph*. 92.)

On principle, it is best and safest to adhere to the old rule, as the most competent to call out the true character of the witness and the extent of that character, as to badness. If the witness is called upon to say whether the character of the impeached witness is bad for truth; or, whether his general moral character is so bad that he would not believe him, he is put in a position to test his real opinion as to the measure of the other's obliquities, in regard to truth, or general moral defects. But the question put in this case did not even call for the *moral qualities* of the general character of the witness. It merely asked for his general character, but whether as a religious man, or political or moral, was not specified.

The true object to be effected is to prove the witness' general character *for truth* to be bad. His general character, in other respects, is of no consequence. All experience shows, that the general characters of many men are bad, in the common acceptation of the word, while their veracity is unimpeachable. Indeed most men term that man's general character bad, who has some one cardinal vice, although in other respects he may be irreproachable.

Thurber *v.* Sharp.

In short, I hold, that proof of general bad character, as that term is generally understood, and used in society, does not *necessarily* and legally, prove the fact that the witness' character for veracity is bad, and therefore I consider it to be immaterial evidence, where the party avows his intention to stop with that question. All the elementary writers, in their formula of queries to the impeaching witness, indicate most clearly and decidedly, that further questions must be put, in order to render the impeachment effectual.

The motion for a new trial must be denied.

[CORTLAND GENERAL TERM, September 14, 1852. *Mason, Shankland, Gray* and *Crippen,* Justices.]