## FLETCHER v. THE STATE.

CRIMINAL LAW.—*Forgery.*—*Intent to Defraud.*—On the trial of a defendant on an indictment for forgery, the intent to defraud may be inferred from the facts and circumstances proved in the cause.

SAME.—*Evidence.*—*Part of Conversation.*—On the trial of a criminal cause, where a conversation, part of which is admissible in evidence, contains admissions tending to show that the defendant was charged with, or was guilty of, a similar offence before, the whole conversation may be given if it cannot be separated, but the jury should be instructed that the admissions should not be considered for any purpose connected with the guilt or innocence of the defendant, or the extent of punishment, if found guilty.

SAME.—*Character of Accused.*—The law invests every person accused of crime with a presumption in favor of good character, and the State cannot offer evidence to impeach such character until the accused has put his general character in issue, by offering evidence in support of it.

SAME.—*Impeachment of Witness.*—In a criminal cause, a witness cannot be impeached or sustained by proof of general moral character.

SAME.—*Argument of Counsel.*—Where a defendant in a criminal cause has not produced any evidence to sustain his general reputation and moral character, it is improper for counsel to argue to the jury that his failure to do so may be considered against him.

SAME.—*Practice.*—*Bill of Exceptions.*—In a criminal cause, where a bill of exceptions is signed and filed during the term, and it shows that the exceptions were taken at the time of the ruling, and that time was given "until now" to file the bill, it will be properly in the record.

From the Wayne Circuit Court.

*H. C. Fox* and *D. W. Mason,* for appellant.

*C. A. Buskirk,* Attorney General, *D. W. Comstock,* Prosecuting Attorney, and *W. A. Bickle,* for the State.

BUSKIRK, C. J.—George W. Williams and Robert B. Fletcher were jointly indicted in the court below for having forged a certain mortgage, a copy of which is set forth at full length in the indictment, and appears in the record.

The indictment consisted of two counts. In the first, it was charged that the mortgage was forged with the intent to defraud Peleg Williams, whose name was charged to have been forged. In the second, it was charged that the forgery was committed with the intent to, defraud John C. Tracy and Samuel Bing-

Fletcher *v*. The State.

ham. The appellant's motion to quash the indictment was overruled, and an exception taken, but such ruling is not assigned for error.

A separate trial was demanded, and the prosecuting attorney elected to try the appellant first. The cause was tried by a jury, and the defendant was found guilty as charged in the second count, and sentenced to the state prison for three years, and fined one hundred dollars. The court, over a motion for a new trial, rendered judgment on the verdict.

The error assigned calls in question the action of the court in overruling the motion for a new trial.

The causes relied upon for a new trial will be considered in the order in which they are discussed by counsel for appellant.

This leads us to consider the seventh, eighth, and ninth instructions given by the court of its own motion, and as they relate to the same subject, they will be considered together.

These instructions were in these words:

" 7. If the evidence convinces you, beyond a rational doubt, that at some time within two years, George W. Williams falsely wrote the name of Peleg Williams and Belinda Williams to the mortgage set out in the indictment, without their knowledge or consent, with the intent to defraud said Peleg Williams, and if the evidence convinces you beyond a rational doubt that the defendant, Robert B. Fletcher, afterward, knowing this, did, in this county, falsely acknowledge the said mortgage by signing his name to the acknowledgment of said mortgage, as set out in said indictment, without the knowledge or consent of said Peleg Williams and Belinda Williams, Robert B. Fletcher would be guilty of forgery, as charged in the first count of the indictment, and the jury should bring in a verdict of guilty.

" 8. If the evidence convinces you, beyond a rational doubt, that these things were done to defraud and cheat John C. Tracy and Samuel Bingham, you would be warranted in finding Robert B. Fletcher guilty as charged in the second count of the indictment.

" 9. The intent with which the act was done, if done at all, may be inferred from all the circumstances proved."

The argument of counsel for appellant, in opposition to the foregoing instruction, may be reduced to the following propositions :

1. In a criminal case, all the facts constituting the offence charged must be established by the evidence beyond a reason-. able doubt, and the jury are the exclusive judges as to whether this is done or not.

2. The facts being for the jury in a criminal cause, the court cannot, in giving instructions, assume that a material fact exists or has been proved at the trial.

3. That the crime of forgery consists of a physical act and a criminal intention.

4. That the intent to defraud the person charged must be proved as a fact, and cannot be inferred from the other facts and circumstances proved in the cause.

The first three propositions undoubtedly contain a correct enunciation of the law, but we are very clearly of the opinion that the fourth is incorrect. The wrongful intent is the essence of every crime, but its existence can only be established from the admissions of the accused party, or from the facts and circumstances proved, to establish the criminal act. The intent to defraud may be presumed from the general conduct of the defendant; and if the necessary consequences of the previous acts be to defraud some particular person, the jury may convict, notwithstanding that the person states his belief on oath that the prisoner did not intend to defraud him. Roscoe Crim. Ev. 561 ; *Regina* v. *Hill*, 8 C. & P. 274.

If the act done is a violation of law, and is not done under a mistake of fact, the criminal intent will be inferred, although the person doing the act believes that the act was done in such a manner as not to amount to a violation of law. *Squire* v. *The State*, 46 Ind. 459 ; *Marmont* v. *The State*, 48 Ind. 21.

Intent is an inference of law. 2 Bishop Crim. Law, sec. 598.

The specific intent is sustained, in matter of law, by any

proof which establishes the forgery, even though in fact the prisoner's intent was different.  2 Bishop Crim. Proced., sec. 422.

We think the court committed no error in giving the instructions set out above.

The sixteenth and seventeenth instructions are complained of, and are as follows:

"16. George W. Williams, when upon the stand as a witness, was permitted to give in evidence any statements made by Fletcher in conversation with him, in relation to the forgery charged in the indictment.  If there was anything in such evidence tending to show that Fletcher was charged with, or was guilty of, forgery before that time, it would be legitimately before the jury, simply as being a part of that or those conversations, and cannot be withdrawn from the consideration of the jury.  It is not competent, however, to prove, as an isolated fact, that Fletcher had at any time before been guilty of, or charged with the commission of any crime, as a circumstance to prove that defendant was guilty of the crime charged.

"17. With the exception of the testimony of Williams, as alluded to above, there is no testimony whatever tending to show that Fletcher was ever guilty of, or charged with, another crime."

Taking the sixteenth and seventeenth instructions together, they, in effect, instructed the jury that it appeared from the admissions of the appellant, detailed in the conversations had between him and Williams in reference to the crime charged, that the appellant had been guilty of, or charged with, the commission of other and distinct crimes; that such admissions were legitimately before them, and " could not be withdrawn," but that they were not competent to prove, as an isolated fact, that Fletcher had at any time before been guilty of, or charged with, the commission of any crime, as a circumstance to prove that defendant was guilty of the crime charged in the present indictment.

It is quite obvious, that the latter portion of the instruction is correct.  It is firmly settled, that the evidence in a crimi-

nal trial should be strictly confined to the crime charged. The sole and exclusive subject of inquiry should be, whether the accused was guilty of the crime charged. If innocent of such charge, he is entitled to an acquittal, although he may have committed many other crimes of which he had gone unpunished.

The thirteenth sec. of art. 1 of our state constitution provides, that " in all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offence shall have been committed ; to be heard by himself and counsel ; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor." 1 G. &. H. 29.

It is worthy of notice, that the words " offence " and " accusation " are used in the singular number, thus importing that separate and distinct crimes cannot be charged in the same indictment. It has, however, been decided, that felonies belonging to the same class, and growing out of the same transaction, may sometimes be joined in different counts in the same indictment. *McGregor* v. *The State*, 16 Ind. 9 ; *Griffith* v. *The State*, 36 Ind. 406.

The evident purpose of such constitutional provision was to guard and protect the rights of a person accused of crime, and to prevent him from being prejudiced in the defence of one crime by evidence tending to prove that he had been guilty of another and distinct crime.

Inasmuch as the admissions constituted part of conversations which were relevant, they were properly admitted in evidence, but the court should have charged the jury that they were admitted solely because they were so connected with conversations that they could not be separated, and that they were not to be considered for any purpose connected with the question of the guilt or innocence of the appellant, or of the extent of punishment, if found guilty. The court having charged the jury that such admissions were " legitimately in evidence," and " could not be withdrawn," the jury must have under-

Fletcher *v.* The State.

stood that they were to be considered for some purpose, though they were told that they were not to be considered in determining whether the appellant had committed the crime charged in the indictment. If they were not competent for such purpose, they were not competent for any, for that was the sole subject of inquiry.

We think the error in the instruction consisted in telling the jury that such admissions were " legitimately in evidence," and " could not be withdrawn." Inasmuch as the jury were charged that such admissions were " legitimately before them," and " could not be withdrawn," and as they were charged that they were not to be considered in determining the guilt of the defendant, the jury may have understood that they were to be considered in fixing the punishment, and may have so considered them.

The court should have expressly withdrawn such admissions from the consideration of the jury, and charged them that they were not to be considered for any purpose of the trial.

Upon the trial of the cause below, the defendant offered no evidence of his general character, but chose to rest upon the presumption which the law indulged in his favor. He went upon the stand as a witness, and testified in his own behalf. After he had closed his evidence, the State introduced a witness who, in answer to a question propounded to him, testified that he knew the general character of appellant, and that it was bad. The matter is thus stated in the bill of exceptions: " To each and every of said questions, before the same were answered, the defendant then and there objected, for the reason that the defendant had offered no testimony touching his general reputation, nor put the same in issue, and that if such evidence was offered for the purpose of discrediting him (said defendant), as a witness, the same should be confined to general reputation for truth and veracity."

The law invests every person accused of crime with a presumption in favor of good character, and the State cannot offer evidence to impeach such character until the accused has put

his general character in issue by offering evidence in support of it. The presumption in favor of good character continues, and must be indulged, as long as the accused rests upon such presumption; but when he abandons the shield which the law has thrown around him, and attempts by affirmative evidence to prove, as a fact, that his general character is good, he opens the door for the admission of evidence on the part of the State to prove that his character is bad.

The law also indulges a presumption in favor of the good character of witnesses, and the party producing them cannot offer evidence in support of such character until the adverse party puts such character in issue in some of the modes known to the law.

In the case of a defendant, he must put his character in issue, but in the case of a witness, the adverse party must put his general character in issue.

These were familiar principles, well known to the profession prior to the passage of the act of March 10th, 1873, which gave to a defendant in a criminal cause the privilege of testifying in his own behalf. We are required, for the first time, to determine what changes, if any, have been produced in the rules of practice by the passage of said act. Prior to such enactment, the rights of a defendant and the privileges of a witness were separate and distinct; but since its passage, a defendant who elects to testify occupies the position of both defendant and witness, and thus he combines in his person the rights and privileges of both. But while this is true, we do not think it should result in any change in the law or rules of practice. In his capacity as a witness, he is entitled to the same rights, and is subject to the same rules, as any other witness. In his character of defendant, he has the same rights, and is entitled to the same protection, as were possessed and enjoyed by defendants in a criminal cause before the passage of the act in question. When we are considering the rights of the appellant in his character of defendant, we lose sight of the fact that he has the right to testify as a witness; and when his privileges as a witness are called in question, they should

be decided without reference to the fact that he is a defendant also.

It necessarily results, from what has been said, that the State had no right to assail the general character of the appellant, as one accused of crime, for the reason he had not put his character in issue.

It is conceded by counsel for appellant, that the State had the right to impeach the appellant, as a witness, by proving that his general character for truth and veracity was bad in the neighborhood of his residence; but it is very strenuously contended, that the State had no right to prove what his general moral character was, to impeach him as a witness.

The solution of this question depends upon whether the last clause of section 242 of the civil code (2 G. & H. 171) applies to the trial of a criminal cause. That clause reads: "In all questions affecting the credibility of a witness, his general moral character may be given in evidence."

It was held by this court, in *Miller* v. *The State*, 8 Ind. 325, *Quinn* v. *The State*, 14 Ind. 589, *Harman* v. *The State*, 22 Ind. 331, *McLaughlin* v. *The State*, 8 Ind. 281, *Hooper* v. *The State*, 9 Ind. 572, and *Miller* v. *The State*, 42 Ind. 544, that the provisions of the civil code do not necessarily govern in criminal practice, yet that it is reasonable to consult them, in the absence of special provisions in the criminal code, in establishing rules. In the present case, we are required to decide the question squarely, whether a witness in a criminal cause may be impeached by proof of his general moral character; because, upon the trial below, the appellant demanded of the court to restrict and limit such testimony to his general character for truth and veracity; but the court overruled the objection, and permitted an inquiry to be instituted into his general moral character.

The statute in question is an innovation upon the common law, and should be strictly construed. It is settled, by a very decided preponderance of authority, that when the purpose was to impeach a witness, the inquiry was confined to general reputation for truth and veracity; and when the purpose was

to inquire into the character of the defendant, the inquiry was generally limited to that trait of character which had some relevancy to the question in issue. Thus, it was said by the court, in *Boon* v. *Weathered*, 23 Texas, 682, that "when a man's honesty is in question, his veracity is not in question. When his veracity is in question, one cares not to know whether he be of a peaceable, or of a quarrelsome disposition. If the question is concerning honesty, the inquiry should be concerning honesty. If the question be one of veracity, the inquiry should be directed to the point at issue."

In the case of *The United States* v. *Van Sickle*, 2 McLean Cir. Ct. 219, the rule is stated with great force. It is there said: "The object of the examination is to shake and overthrow the credit of the witness. Now, this is effectually done by showing that in the neighborhood in which he lives, and where his character is best known, he is not considered worthy of credit. Shall a public opinion which does not reach his credibility, be proven as a fact from which the jury may infer a want of credibility? This would be an inference from public opinion which had not been drawn by the public. It would be a conclusion inferred, not from original facts, but from an opinion formed on those facts by the public. It would be an inference on an inference. This would be a new rule, not yet incorporated, it is believed, into the law of evidence."

In *Atwood* v. *Impson*, 5 C. E. Green, 150, it is said: "With many, telling the truth is a habit and a principle which they adhere to always, though they may indulge in drinking, swearing, gambling, roystering, and making close bargains. With others, lying is the habit, or principle, and if elevated to be senators or legislators, or made church-members or deacons, it does not always reform them."

We cite, as sustaining the proposition, that, at common law, the inquiry into the general character of a witness was limited to truth, the following authorities: *Teese* v. *Huntingdon*, 23 How. (U. S.) 2; *The United States* v. *Van Sickle*, 2 McLean, 219; *Gass* v. *Stinson*, 2 Sumner, 605; *Gilbert* v. *Sheldon*, 13 Barb. 623; *The People* v. *Rector*, 19 Wend. 569; *Jackson* v.

*Lewis,* 13 Johns. 504; *The State* v. *Bruce,* 24 Me. 71 ; *Commonwealth* v. *Moore,* 3 Pick. 194 ; *Morse* v. *Pineo,* 4 Vt. 281 ; *State* v. *Smith,* 7 Vt. 141 ; *Spears* v. *Forrest,* 15 Vt. 435 ; *The State* v. *Randolph,* 24 Conn. 363 ; *State* v. *Howard,* 9 N. H. 485 ; *Gilchrist* v. *M'Kee,* 4 Watts, 380 ; *Chess* v. *Chess,* 1 Penn. 32 ; *Uhl* v. *Commonwealth,* 6 Grat. 706; *Ward* v. *The State,* 28 Ala. 53 ; *Ford* v. *Ford,* 7 Humph. 92 ; *Jones* v. *The State,* 13 Texas, 168 ; *Craig* v. *The State,* 5 Ohio St. 605 ; *Wike* v. *Lightner,* 11 S. & R. 198 ; *Bucklin* v. *The State,* 20 Ohio, 18 ; *Thurman* v. *Virgin,* 18 B. Mon. 785 ; *Perkins* v. *Mobley,* 4 Ohio St. 668 ; *Bates* v. *Barber,* 4 Cush. 107 ; *Ayres* v. *Duprey,* 27 Texas, 593 ; *Noel* v. *Dickey,* 3 Bibb, 268 ; *Webber* v. *Hanke,* 4 Mich. 198 ; *Patriotic Bank* v. *Coote,* 3 Cranch C. C. 169 ; *United States* v. *Masters,* 4 Cranch C. C. 479 ; *United States* v. *White,* 5 Cranch C. C. 38 ; *The United States* v. *Dickinson,* 2 McLean, 325 ; *Atwood* v. *Impson,* 5 C. E. Green, 150 ; *Newman* v. *Mackin,* 13 Sm. & M. 383 ; *Quinn* v. *The State,* 14 Ind. 589 : Whart. Crim. Law, sec. 814 ; Taylor Ev., sec. 1083.

We are of opinion that the rule of practice established by the legislature in civil cases should not be applied to criminal causes.

The effect of an adverse ruling would be to put a defendant's general moral character in issue, without his consent, which would necessarily and unavoidably prejudice him in his defence of the charge for which he is being tried.

The evidence under examination was improper, as affecting the character of the accused, because he had not put his character in issue ; and it was improper for the purpose of impeaching the appellant as a witness, for the reason that in a criminal cause a witness cannot be impeached or sustained by proof of general moral character.

The appellant introduced evidence of the general reputation for truth and veracity of George W. Williams, for the purpose of impeaching him as a witness, and the State, to sustain him, introduced evidence of his general moral charac-

ter. This, according to the rule above laid down, was improper.

Objection is made to argument of counsel on behalf of the State. Such attorney, while " addressing the jury, commented on the general character of the defendant, and said that said defendant had the power to produce evidence to prove and sustain his general reputation and moral character before the jury, and argued that his failure to do so might be considered against him."

While the appellant had the right to introduce such evidence, he was not bound to do so, and his failure to do so could not be commented on in argument. The legal presumption in his favor could not be impaired or destroyed by his failure to offer affirmative evidence as to character. *State* v. *Upham*, 38 Me. 261; *Walker* v. *The State*, 6 Blackf. 1.

The ruling of the learned and usually very accurate judge who presided at the trial was doubtless based upon the supposition that the appellant's general character was in issue; and it is quite likely that the argument of counsel proceeded. upon the same theory.

We have postponed to this point the examination of a preliminary question discussed by counsel for appellee. This case was prepared for the decision of this court, under section 121 of the criminal code, 2 G. & H. 420, which provides, that " the bill of exceptions must contain so much of the evidence only as is necessary to present the question of law upon which the exceptions were taken." The evidence is not set out in full, but only so much is stated as was supposed to be necessary to present the questions of law. *Harman* v. *The State*, 22 Ind. 331. Exception is taken to the form of the bill of exceptions.

The bill of exceptions sets out the evidence offered, the objection of appellant, with reasons therefor, the ruling of the court thereon, and then says: " To which ruling of the court the defendant then and there excepted, and time was given until *now* in which to file his bill of exceptions." It is

insisted, that when time is given in which to prepare and file a bill of exceptions, the record must show affirmatively that it was filed within the time limited, and that the word "now," as used in such bill, is not sufficient for that purpose. Such is the rule when time is extended beyond the term. In criminal cases, time cannot be extended beyond the term. It must be signed during the term. The exception must be taken at the time of the ruling, and the bill of exceptions must be made out and presented to the judge at the time of the trial, or within such time as the court may allow during the term. *Stewart* v. *The State*, 24 Ind. 142. In the present case, the bill was signed and filed during the term, and it shows that the exception was taken at the time of the ruling, and that time was given until *now*, which, according to Webster, means "at the present time." We think the bill of exceptions is properly in the record. *Stewart* v. *The State, supra; Dunn* v. *The State*, 29 Ind. 259; *Fitzenrider* v. *The State*, 30 Ind. 238; *Port* v. *Russell*, 36 Ind. 60; *Jenks* v. *The State*, 39 Ind. 1.

The instructions complained of are properly in the record, independently of the bill of exceptions. They were signed by the judge, and the exception of appellant is entered and signed by counsel. This is sufficient. *The J., M. & I. R. R. Co.* v. *Cox*, 37 Ind. 325; *Emmons* v. *Newman*, 38 Ind. 372.

We have been greatly aided, and our labors lightened, by the very full, able, and elaborate briefs of counsel.

The judgment is reversed, with costs; and the cause is remanded for another trial, in accordance with this opinion; and the clerk is directed to issue the necessary order for the return of the prisoner to the jail of the county of Wayne.