Okey, J.
There was no error in permitting the cross-examination of Geitgey. Ordinarily the extent to which a witness may be cross-examined as to matters merely collateral, rests largely in the discretion of the court. But here, aside from the question as to the right to contradict, cross-examination, to the extent shown by the record, appears to have been rather a matter of right in the cross-examining party, than of discretion in the court. Martin v. Elden, 32 Ohio St. 382; Hanoff v. State, 37 Ohio St. 178, 187; Dresback v. State, 38 Ohio St. 365; Tullis v. State, 39 Ohio St. 200. Besides, in this state and most — not all — other states, and in England, it is necessary, in cases of impeachment or attempted impeachment by contradictions, that a foundation should be laid, by stating to the witness sought to be contradicted the time, place, and persons involved in the alleged contradictions. King v. Wicks, 20 Ohio, 87; Runyan v. Price, 15 Ohio St. 1.
*430 The testimony of Jennie Coleman was not offered upon tlio theory that the declarations of Geitgey were those of a co-conspirator of Rent; nor was the testimony admissible upon any such theory, for the declarations were not made in furtherance of a conspiracy. Patton v. State, 6 Ohio St. 467; Fonts v. State, 7 Ohio St. 471; Rufer v. State, 25 Ohio St. 464, Sharpe v. State, 29 Ohio St. 263; Dilcher v. State, ante, 173. Although the purpose for which her testimony was offered is not stated in the record, we may well say the object was .to contradict the testimony of Geitgey, and in that way destroy or weaken the force of his testimony in chief [Burt v. State, 23 Ohio St. 394), and the question is whether her testimony was admissible for such purpose.
Tüat error will not be presumed, is a familiar ánd well settled general rule in appellate courts. Whoever seeks the reversal of a judgment or order, whether in a civil or criminal case, must come prepared to show by the record, not only that error has intervened, but that it has been to his predjudice. McHugh v. State, ante, 154. , So strict is this rule, that while it is settled that a judgment will not be reversed for the exclusion of evidence, unless every material part of it was competent for the purpose stated by the party offering the same (Gandolfo v. State, 11 Ohio St. 114; Bolen v. State, 26 Ohio 371; Hamilton v. State, 34 Ohio St. 82; Gregory v. Walker, Crutcher v Memphis, 38 Ala. 26, 579), it is equally well settled that where evidence is admitted against a general objection, the judgment will not be reversed for that cause, if any material part of such evidence was competent for any purpose (Nutwell v. Tongue, 22 Md. 219; King v. Faber, 51 Pa. St. 387; Dreux v. Domec, Nightingale v. Scannell, 18 Cal. 82, 315; Sneed v. Osborn, 25 Cal. 619; Requa v. Holmes, 16 N. Y. 193; Day v. Roth, 18 N. Y. 448; Fountain v. Brown, 38 Ala. 72; David v. David, Kiepatrick v. Pickens, 56 Ala. 140, 422; Hayes v. Woods, 72 Ala. 92); and the principle is further illustrated by the rule, that where specific objections are made to the introduction of evidence, this, on error, is a waiver of all other objections in that respect. *431 Massey v. Smith, 73 Ala. 173; Gaines v. Com., 50 Pa. St. 319, 326.
It is said in a multitude of cases, and may be regarded as well settled, that where a party cross-examining a witness, desires to call a witness to contradict him, the right to do so will, in general, be determined by the answer to the question, whether the matter offered in contradiction is in any way relevant to the issue, or such as tends to show prejudice or interest, with respect to the cause or the parties, on the part of the witness sought to be contradicted. If an affirmative answer can be given to the question, the contradiction will be permitted, and, ordinarily, otherwise not. While this rule is plain, embarrassing questions frequently arise in determining whaf relation the evidence offered in contradiction must bear to the issue, or in what manner it must disclose prejudice or interest, in order to be admissible. In England an effort was made to remedy this evil just referred to, as to civil cases, by the Law Procedure Act of 1854, which provision, in 1865, was extended to criminal cases; but the effort has, it seems, not been entirely successful.
It will be instructive to examine some of the cases on this subject. In Harris v. Tippett, 2 Campb. 627 (1811), a witness for the defendant having denied, on cross-examination, that he had attempted to dissuade a witness examined for the plaintiff from attending court, it was held that he could not be contradicted. So in R. v. Yewin, 2 Campb. 638, a witness for the crown having denied, on cross-examination, that he had been charged with robbing the prisoner, it was held that witnesses could not be called to contradict him. In Atty. Gen. v. Hitchcock, 1 Welsby, H. G. 91 (1847), the leading case, inquiry was mude of a witness for the crown, on cross-examination, whether he had not said that the crown officers had offered him a bribe to testify, as in fact he did testify in his examination in chief. The witness denied that he had so stated, and Pollock, C. B., refused to permit the witness to be contradicted. A rule was' obtained for a new trial, but after argument by distinguished counsel, the court was unanimous in holding that the chief baron did not err. In *432 R. v. Burke, 8 Cox C. C. 44 (1858), it appeared that Thornton, a witness called bj the prisoner, gave evidence tending to his acquittal. The witness testified in Irish, and on cross-examination denied that he had conversed in English with witnesses then in court, or that he could speak English. The judge presiding permitted the crown to call witnesses to show that Thornton could speak English and had conversed with them in that language. This is a carefully considered case in the court of criminal appeal, Ireland, the majority of the court- holding that there was error in permitting such contradiction. In R. v. Holmes, L. R. 1 C. C. 334 (1871), the prosecutrix in a prosecution for that which was equivalent to an attempt at rape, having denied previous connection with another man, it was held that this was collateral, and that she could not be contradicted. In Harrington v. Lincoln, 2 Gray, 133, the court below permitted the contradiction of a witness, who, on cross-examination, denied that immediately after another witness had left the stand, he had said to the retiring witness that if he had been cross-examined as he, the retiring witness, had been, he would have said something, even if it had been untrue. This was held to be error. The court said it was not only collateral, but failed to show bias or prejudice, and at most could only show that the witness so contradicted was a man of incorrect moral veiws. The People v. Stackhouse, 49 Mich. 76, indictment-for arsan, was a case in which a witness who had given important evidence tending to the prisoner’s acquittal, denied, on cross-examination, that she had said, on the night of the prisoner’s arrest, that she “always did suspect Jerry (the prisoner) burned the mill.” The court below permitted witnesses to be called, who testified she had so stated, and this was held to be error.' We do not find any other case which has gone so far in excluding such evidence in contradiction, and perhaps the case ought to be placed on the ground that the words alleged to have been spoken by the witness were the idle expressions of a person who, it appeared, had no actual knowledge of the matter. And see further, in support of the exclusion of such evidence in impeachment, R. v. Watson, 2 Stark. 149; U. S. v. *433 Dickerson, 2 McLean, 325; State v. Patterson, 2 Ired. L. 346; State v. Patterson, 74 N. C. 157; Hildeburn v. Curran, 65 Pa. St. 63; Munshower v. State, 55 Md. 11; and see Webb v. State, 29 Ohio St. 351; Dilcher v. State, supra.
The case before us is clearly distinguishable from the cases I have mentioned. Parts of the evidence of Dr. Shafer may have been, and probably were, incompetent, but other parts are substantially like the testimony of Jennie Coleman, and the objection in both cases having been general, the question whether there was error in permitting evidence to be introduced may fairly be determined by the answer tó this inquiry: Was Jennie Coleman’s testimony, or any material part of it, competent for any purpose ? We unite in holding that the question must be answered in the affirmative. In the evidence offered by the state to convict Kent, there was testimony tending to show that Geitgey, with the intent to obtain the amount of policies of insurance on the store-house and contents, hired Kent to burn the property, while he, Geitgey, was absent from the state. This alleged fact was not charged in the indictment, nor was it legally essential to Kent’s conviction, and lienee its truth or falsity was not directly in issue in the case. But the evidence supporting that view was so blended with evidence directly tending to Kent’s guilt, that it was difficult, if not impossible, to separate it; and the evidence tending to show such conspiracy was so strong that Kent deemed it important to call Geitgey as a witness to deny the imputation. Obviously, Geitgey had a powerful motive to testify to that which would secure the acquittal of Kent, and no satisfactory reason can be given why, under the circumstances, it was not proper to show such motive by the cross-examination of Geitgey, and on his denying such motive, by calling witnesses to contradict him. It might well be argued, indeed, that Geitgey’s denial was, virtually, that he had said he was paying Kent money (blackmail), from time to time, because he had procured Kent to burn the property. True, there is always danger that such evidence in contradiction will be used for an improper purpose, that is, instead of using it for its only legitimate purpose, to wit, to lessen the *434 credit which might otherwise be given to the testimony of the witness so contradicted, — the jury, in a case like this, will look to the contradiction as substantive evidence of the defendant’s guilt. But it is well settled that this is not a sufficient ground for excluding evidence. A similar danger is encountered where, on a charge of passing counterfeit coin, proof is offered of the possession of similar counterfeit coins by the prisoner, at or near the time he passed the coin in question, and yet such proof is constantly permitted. It is, however, the duty of the court, in all such cases, to state to the jury the only purpose for which such evidence can be regarded, and here we will presume, the record being silent, that the judge presiding at the trial perforated his duty, by saying the evidence in contradiction was solely with reference to the credit to be given Geitgey’s testimony.
In Attorney-General v. Hitchcock, supra, and Hildeburn v. Curran, supra, it is stated that the test whether, in cases other than those involving bias or interest; a fact inquired about in cross-examination is collateral, found in the correct answer to the inquiry, whether, the cross-examining party would be entitled to prove it as part of 1ns case, tending to establish his plea. Whether this supposed test is really a test, may, it is said, be doubtful; but ordinarily it is a test, though it is unnecessary to discuss the question in this case, for here the evidence offered in contradiction tended strongly to show the bias, feeling and interest of Geitgey, with respect to the cause and the parties, and clearly, as will appear from cases hereinafter cited, the fact that the expressions of Geitgey, detailed by Jennie Coleman, tended to show bias against rather than in favor of Kent, can, under the circumstances, have no effect upon the right to offer the evidence in contradiction.
The cases supporting the admissibility of the testimony of Jennie Coleman, as contradicting Geitgey with respect to his bias and interest concerning the cause and parties, are numerous and in are opinion impregnable. We will take space to state the points decided or views expressed in a few of them. In R. v. Yewin, supra, a witness for the crown, denying on cross-examination that he had said that he would be revenged *435 on tbe prisoner and soon fix him in jail, it was held that witnesses might be called to contradict him. So, in Atty. Gen. v. Hitchcock, supra, Parke, B., said: “ We cannot enter into a collateral question as to the man’s having committed a crime on some former occasion, one reason being, that it would lead to complicated issues, and long inquiries; and another that a party cannot be expected to be prepared to defend the whole of the actions of his life. Neither of these cases applies to the case of receiving a bribe, nor to a man’s having a direct influence in giving his evidence in a cause. It may be shown that he acted through motives of malice, as every man who comes into the witness box must come' prepared to show that he gives his evidence from pure motives; and such as shows that he does not, would be admissible against him.”
In Newcomb v. State, 37 Miss. 383 (1859), Mrs. Newcomb, mother of the prisoner, was called by him and gave evidence strongly tending to his acquittal. Denying, on cross-examination, that she had said, previous to the homicide, that if the prisoner did not kill John Freeze (the person alleged to have been murdered), she would not own him as her son, the state was permitted to call a witness to contradict her in this respect, and this was held not to be error.
In Com. v. Gaines, supra (1865), which was an indictment against the defendant for the murder of his brother, evidence was given tending to show that the defendant was guilty, and there was also evidence tending to show that the homicide was committed by Absalom Smoke. Smoke, who was called for the commonwealth, gave evidence strongly tending to show the defendant’s guilt. Upon cross-examination he denied that he ever charged the deceased with criminal intimacy with his wife, or that he had said he was watching for an opportunity for revenge. A witness having been called to contradict him, the court rejected the evidence on the ground that the matter involved in the inquiry was collateral. But the supreme court reversed the judgment, upon the ground that “the motives which operate upon the mind of a witness when he testifies are never regarded as immaterial or collateral matters.”
*436 In Scott v. State, 64 Ind. 400 (1878), in which there was a conviction for shooting with intent to murder, Weimer, who was called by the state, and gave material evidence tending to the defendant’s conviction, was asked the following question: “ Did you not say to Squire Fisher ” (alluding to a conversation between the witness and Fisher about the-difficulty, soon thereafter and at the place thereof), “ it is well you stopped it when you did for 1 had my knife out.” The witness answered, “ I did not.” The court having excluded the evidence called by defendant to contradict Weimer, the supreme court reversed the judgment upon the same ground as in Com. v. Gaines.
The ground on which these decisions are placed sustain the reception of the testimony of Jennie Coleman and Dr. Schafer — at least a material part of it, — for such evidence in contradiction of Geitgey tended to weaken the force, if not wholly destroy the effect of his testimony. Numerous cases equally in point might be cited, but most of them are collected in the. text books. See Whart. Ev. § 561; Whart. Cr. Ev. g 485 ; 1 Green. Ev. (14th ed.) § 450; Phillip’s Ev. (5th Am. ed.) 971* ; Starkie’s Ev. (10th Am. from 4th Lond. ed.) 203* ; Stephen’s Dig. Ev. Art. 130 (2); Roscoe’s Cr. Ev. (7th Am. from 8th Eng. ed.) 103.
2. If we could regard the affidavits to prove misconduct of the jury as admissible, we would not hesitate to say — assuming that we have jurisdiction to say — that they presented a case which 'called upon the court of common pleas to grant a neAv trial; for the accused, in any criminal case, has the right to meet the Avitnesses face to face, and that includes the right to cross-examine all witnesses not' called by himself. Rut there was no evidence of misconduct, except that contained in the affidavits of jurors, and the statements in affidavits had relation alone to what took place in the jury room, and affected, in a sense, each and every juror. Hence, applying the ordinary rule, that the affidavits could not properly be considered until some evidence other than the testimony of jurors had been offered, no case for setting aside the verdict was shown. Farrar v. State, 2 Ohio St. 54; Thompson & *437 Merriam on Juries, ch. XXI. If the law in this respect is wrong, the legislature alone should change it.

Judgment affirmed.