[No. 10,239.]
## THE PEOPLE v. ATHERTON.

CHALLENGE TO JUROR.—The action of the court in a criminal case in allowing
a challenge to a juror for implied bias, is not the subject of an exception.

PUNISHMENT OF PARTY CONVICTED OF MURDER. — Since the passage of the
statute permitting jurors, when they find the defendant guilty of murder
in the first degree, to limit the penalty to imprisonment for life, instruc-
tions of the court calculated to influence the jury upon the question of
punishment should be pertinent and have reference to the evidence, and
the propriety of such instructions should be governed by the same rules
of law which are applied to instructions upon the principal issue.

INSTRUCTIONS TO JURY IN CRIMINAL CASE.—Instructions to a jury in a crim-
inal case must be predicated upon some evidence given before the jury.

PRESUMPTIONS IN CRIMINAL CASE.—On a trial for murder, guilty knowledge
on the part of the prisoner that the deceased was unarmed, cannot be
assumed to exist, but must be affirmatively shown.

APPEAL from the District Court, Twentieth Judicial Dis-
trict, County of Santa Cruz.

The facts are stated in the opinion.

*F. A. Adams and Pringle & Hayne,* for the Appellant.

*Jo Hamilton, Attorney-General,* for the People.

By the COURT:

The prisoner having been convicted in the court below of
the crime of murder in the first degree, in the felonious kill-
ing of Edgar G. May, and adjudged to suffer death, brings
this appeal from the judgment, and from an order denying
his motion for new trial:

1. We are unable to discover any error in the action of
court below denying the motion of the prisoner to change
the place of trial of the case. Though the point is made in
form, no argument in its support has been submitted, and
it is understood to have been abandoned.

2. In impaneling the trial jury, T. V. Johnson, who had
been returned upon the venire, having stated that he "did
not like to have anything to do with a case where death was
at stake," was thereupon challenged by the District Attor-
ney for implied bias. The challenge was sustained by the

court, and Johnson not permitted to serve as a juror. To the action of the court in sustaining the challenge, an exception was reserved by the prisoner. Section 1170 of the Penal Code (which is in this respect identical with section 433 of the former Criminal Practice Act), provides that on the trial of an indictment, exceptions may be taken by the prisoner to a decision of the court upon a matter of law "in *disallowing* a challenge * * * to an individual juror for implied bias." In *People* v. *Murphy* (45 Cal. 142), the provisions of the statute upon this point were considered, and we there held, in accordance as we think with the plain intent of the statute, that the action of the court in *allowing* a challenge to an individual juror for an implied bias is not the subject of an exception.

3. At the trial the court below charged the jury as follows: "That if the defendant, knowing the deceased to be unarmed, provoked a quarrel with deceased and voluntarily engaged in a combat with him, having, himself, upon his person, and concealed, a deadly weapon, proposing to use the same on the deceased, and did in such combat, and not in self-defense, use such weapon, and slay the deceased therewith, such killing is murder."

To the giving of this instruction the prisoner reserved an exception, and now claims that it involves an error, entitling him to a reversal of the judgment.

In considering the propriety of this instruction it should be borne in mind that, under the provisions of the statute now in force in this State, the jury not only, as formerly, by their verdict, ascertain the guilt or innocence of the prisoner, but in case they find him guilty of the crime of murder in the first degree, also determine whether he shall suffer the extreme penalty of the law or imprisonment in the penitentiary. (*People* v. *Welch*, 49 Cal. 174.)

In determining between these penalties juries should be, and doubtless are, influenced by a consideration of the degree of atrocity with which the particular murder has been attended. It is not the purpose of the statute that the extreme penalty should absolutely be imposed in all cases of murder, even in the first degree, but only in certain cases

designated by the statute itself, and in such other cases as in the opinion of the jury, by their attendant circumstances, demand the imposition of such a penalty. Thus it would, in point of law, be murder in the first degree if the prisoner, armed with a deadly weapon, deliberately provoked a quarrel, engaged in deadly combat with the deceased, and premeditatedly and with malice aforethought, and not in necessary self-defense, slew him; and it would not be any the less murder in the first degree, under such circumstances, even if the party assaulted were armed, known to the prisoner to be so, and the combat had proceeded upon equal terms and with no unfair advantage upon the part of the prisoner. So, too, if the prisoner, being armed with a deadly weapon, had attacked the deceased, who was unarmed and known to the prisoner to be so, or under circumstances where he could not defend himself, and had slain him, not in necessary self-defense, the killing would be murder in the first degree. But it would not necessarily follow, nor does the statute intend that it should, that the same measure of punishment should be imposed in each of the supposed cases, or that, in respect to the degree of punishment, he who slew his adversary in equal combat should suffer as he who had been guilty of a bald assassination. In view of the provisions of the statute, committing to the judgment of the jury, as it does, the measure of the punishment of the crime of murder in the first degree, it becomes important not only that the jury should be correctly instructed upon the points of law involved in the solution of the principal question of the guilt or innocence of the prisoner, but that they should not be misdirected upon propositions going to make up their determination as to the character of the penalty to be inflicted upon a conviction of that offense. It is alike important to the rights of the prisoner and to the proper administration of criminal justice, that instructions calculated to influence the determination of the jury upon the question of the punishment to be inflicted in case of conviction should be pertinent and have proper reference to the evidence, and that their propriety in a given case should be determined by the same rules of

law which are applied to instructions upon the principal issue in the case.

It was said here in *People* v. *Sanchez* (24 Cal., 28), as follows : "No instruction should be given to a jury which is not predicated upon some theory logically deducible from at least some portion of the testimony. Such instructions are only calculated to confuse and mislead the jury, and ought not to be given." Again, in *People* v. *Byrnes* (30 *Id.*, 207): "Instructions are always to be given with reference to the facts proved before the jury." Obviously, if a hypothetical instruction be given to a jury, the hypothesis assumed as its basis should be one which finds some support in the evidence adduced at the trial, for if the hypothesis be one entirely beyond and without the evidence, and wholly unsupported by it, the tendency of the instruction would be to mislead the jury.

The instruction just recited necessarily rests upon two inculpatory hypotheses at the outset:

1. That the deceased was, in point of fact, not armed.

2. That the prisoner knew this as a fact.

It is to be observed that no evidence upon either of these points was offered by either party at the trial. No witness was examined nor circumstance shown in evidence for the purpose of establishing the condition of the deceased in that respect or the prisoner's knowledge of that condition when the homicide occurred.

In this state of the proof, the instruction under consideration must have proceeded not only upon the negative presumption that the deceased was unarmed, because not affirmatively shown to have been armed; but also the affirmative presumption that the prisoner knew the fact, because not negatively shown to have had no knowledge of it. Without stopping now to inquire whether under the rules applicable to criminal trials a presumption of fact arises that a particular person was unarmed, because the evidence fails to establish the contrary, we think it must be admitted that guilty knowledge upon the part of a prisoner on trial cannot be assumed to exist, but must be affirmatively shown by direct

proof upon the point or proof of circumstances from which such knowledge may be inferred as a fact.

Judgment and order denying a new trial reversed and cause remanded for a new trial.