## UNITED STATES v. JONES.

### (District Court, D. Nevada. September 3, 1895.)

### No. 820.

1. GRAND JURORS—EXCUSING BY COURT OF OWN MOTION.
   Complaint cannot be made of the excusing of grand jurors by the court of its own motion, where those substituted were not disqualified, especially where counsel, though present, made no objection to the action of the court.

2. SAME—GROUNDS OF OBJECTION.
   Federal courts, of their own motion or that of counsel, may enforce other objections than prescribed by state statutes, to grand jurors.

3. INDICTMENT—ABATEMENT.
   An indictment will not be abated on a charge that a witness gave the grand jury ·hearsay evidence; that he referred to books of which, though in his possession, he was not the legal custodian; and that he gave his opinion to them as an expert,—especially where the charge is merely on information and belief.

4. INDICTMENT—JOINDER OF OFFENSES.
   Under Rev. St. § 1024, providing that where there are several charges against a person for the same act, or for two or more acts connected together, or for two or more acts of the same class of crimes, which may be properly joined, the whole may be joined in one indictment in separate counts, an indictment may contain a count under section 5456 referring to the felonious taking away by any one of anything belonging to the United States, from any place, and a count under section 5460, referring to the felonious taking and embezzlement of the metals at the United States mint by a person to whose charge they were committed; and it is immaterial that one might be classed as larceny, and the other as embezzlement, or that the punishment is different.

5. SAME—DESCRIPTION OF PROPERTY.
   An indictment for larceny or embezzlement sufficiently describes the property as "gold metal * * * of the value of $23,000."

John T. Jones was indicted under Rev. St. §§ 5456, 5460. Heard on motion to quash indictment, plea in abatement, and demurrer.

On the 23d day of August, 1895, a "true bill" of indictment was found by a grand jury against defendant, containing two separate counts, the first charging that the defendant, on the 15th day of June, 1893, and before the finding of this indictment, "did unlawfully and feloniously take, steal, and carry away from the United States mint at Carson City, state and district of Nevada, personal property, to wit, gold metal, which said personal property belonged to the United States of America, and which said personal property was of the value of $23,000; the said unlawful and felonious taking and carrying away being with the intent, then and there, to steal the said property, and defraud the United States of America thereof," etc. Rev. St. U. S. § 5456. The second charging "that said John T. Jones, on the 30th of June, 1892, and continuously thereafter until the 9th day of April, 1895, was a person employed by the government of the United States of America in and about the United States mint at Carson City, state of Nevada, to wit, the said John T. Jones was at the said dates, and during all of said time, employed as the assistant melter and refiner, and was the assistant melter and

refiner of said United States mint, and during said employment, and on the 15th day of June, 1893, there was committed to the charge of said John T. Jones, assistant melter and refiner as aforesaid, at the Carson mint aforesaid, for the purpose of being coined, gold metal belonging to, and which was the property of, the United States of America, and which said gold metal was of the value of $23,000; and the said John T. Jones, assistant melter and refiner of the United States mint at Carson City, Nevada, as aforesaid, employed at said United States mint as aforesaid, did on the 15th day of June, 1893, the said gold metal, of the value of $23,000, committed to his charge as aforesaid, at the time aforesaid, and at the United States mint at Carson City, state of Nevada, for the purpose of being coined as aforesaid, unlawfully and feloniously take and embezzle, with intent then and there to defraud the United States of America thereof," etc. Rev. St. U. S. § 5460. Defendant filed a plea in abatement to said indictment, and moved the court to quash and set it aside, upon the following, among other, grounds: First. That the grand jurors were not impaneled according to law, in this: That, of the jurors returned as served by the marshal, 23 names were drawn from the jury box, and took their seats, and were sworn to answer questions touching their qualifications to serve as grand jurors; that they possessed the qualifications prescribed by law; that five of such persons were excused by the court of its own motion, without any challenge being interposed either by the United States attorney, or by the attorneys of the defendant, or attorneys for other persons held to answer before the grand jury, who were present in court at the time. Thereafter, five other persons were selected, and the grand jurors so selected were duly sworn, and found the indictment against defendant. The plea in abatement and motion to quash further state: "That this defendant is informed and believes, and so alleges the fact to be, that it was and is not the law, the custom, or the practice, in the state of Nevada, to examine any grand juror as to any qualification or disqualification, except those mentioned in sections 3788 and 4065 of the General Statutes of Nevada, or to allow any exceptions other than those mentioned in section 3796 of the General Statutes of Nevada. That defendant believes, and so alleges the fact to be, that if the said twenty-three grand jurors first called into the jury box had been sworn as a grand jury, or had a grand jury been selected from said twenty-three persons according to the law and practice of the state of Nevada, no indictment would have been found against him. Second. That as this defendant is informed and believes, and so alleges the fact to be: While said charge against this defendant was pending before the said grand jury the U. S. district attorney called as a witness in behalf of the government, and against this defendant, one Andrew Mason, of New York. That said Andrew Mason was and is the superintendent of the U. S. assay office in the city of New York, in the state of New York, and was the special agent of the treasury department of the government of the United States to make examinations and investigations concerning certain alleged shortages and deficiencies in the U. S. mint at Carson City, Nevada. That said Andrew Mason, with the acquiescence of, and without objection by, the U. S. district attorney, gave a large amount of hearsay testimony before said grand jury; stating to said grand jury what he had heard and what he had been told concerning said mint shortage, and concerning this defendant, and gave his conclusions therefrom, and also his opinions concerning the same, and concerning the alleged or supposed connection of this defendant with such shortage. That said Andrew Mason testified before said grand jury as an expert in all mint matters and accounts, and as an expert assayer and melter and refiner of gold and silver, without the order, knowledge, or permission of this court, and without it having been in any way ascertained that he was competent to testify as such expert. That said Andrew Mason also produced before said grand jury books and documents, and testified therefrom, of which said books and documents he was not the lawful or proper custodian. That said Andrew Mason, with the acquiescence of, and without objection from, the U. S. district attorney, testified before said grand jury concerning investigations and examinations, and concerning assays of gold and silver, made by him, or under his direction, in the U. S. mint at Carson City, Nevada, and stated and gave to said grand jury his conclusions and opinions drawn from

said investigations, examinations, and assays, and testified before said grand jury, in substance and effect, and in words, that there was no doubt but that defendant, John T. Jones, was the guilty culprit, and further testified, in substance and effect, and in terms, that he had caught one thief, and that he desired to catch another, and that there was no doubt but that defendant, John T. Jones was the thief, or that there was no doubt that defendant, Jones, was a thief. That while before said grand jury, and after expressing his opinions or giving his conclusions, said Andrew Mason frequently said to the grand jurors: 'This is the way it looks to me. How does it look to you?'—or used words of similar import. That affiant is informed and believes, and so alleges the fact to be, that the charge against him was considered and ignored by said grand jury on August 22, 1895, and was reconsidered, and the indictment herein found, on August 23, 1895, and that if said illegal and inadmissible hearsay testimony had not been given, and said unwarrantable and inadmissible opinions, conclusions, and statements had not been given and made before said grand jury, by said Andrew Mason, no indictment would have been found by said grand jury against this defendant. Third. That there are two offenses or charges embraced in said indictment, which could not be connected together, and which could not arise out of the same transaction, which are not of the same class of crimes, and which are improperly joined, to wit, larceny and embezzlement. That, under the instructions and admonitions of the court concerning the secrecy that it is proper to observe as to the deliberations of the grand jury, grand jurors would be loath to make affidavits concerning the evidence given before them, and that defendant has doubts as to the propriety of endeavoring to procure such affidavits without leave of court."

Trenmor Coffin, William Woodburn, and Torreyson & Summerfield, for defendant.

Charles A. Jones, U. S. Atty., and Robert M. Clarke, Special Counsel, for the United States.

HAWLEY, District Judge (orally). 1. The court did not err in excusing certain grand jurors of its own motion. One was excused because he was a surety upon the bond of defendant for his appearance in court. Another, because he had left the state, with his family, without the intention of returning, and had sought and obtained employment in another state, and had simply returned to this state on a temporary visit. Another was a witness in the mint cases. The others had either formed or expressed opinions of the guilt or innocence of the defendants in the mint cases. There is no pretense that any of the grand jurors who were sworn and found the indictment were disqualified to serve or were in any respect improper persons. If any disqualified juror had been placed upon the panel, it might be urged that it would injuriously affect the whole panel; but, if all the individuals selected and sworn were in all respects unobjectionable, it is difficult to see how the defendant can maintain any objection on the ground that certain other persons were excused from serving. U. S. v. Gale, 109 U. S. 65, 70, 3 Sup. Ct. 1. In State v. Kelly, 1 Nev. 226, the court said:

"When there is any probability that a juror is disqualified, and the court is unable to determine it, by reason of its inability to establish the fact constituting such disqualification, as in this case, it is not required to hazard the regularity of its proceedings by permitting such person to sit as a juror."

See, also, State v. Larkin, 11 Nev. 326.

The rule is well settled that for any good cause shown the court may, without challenge from either party, excuse a juror, of its

own motion, before he is sworn, and if an impartial jury is there-
after obtained the defendant cannot complain. State v. Larkin, 11
Nev. 326, and authorities there cited; State v. Pritchard, 15 Nev.
79; State v. Crutchley, 19 Nev. 369, 12 Pac. 113; People v. Murphy,
45 Cal. 143; People v. Colson, 49 Cal. 679; People v. Atherton, 51
Cal. 495. In State v. Bradford, 57 N. H. 198, where certain grand
jurors were excused, the court said:

"The court has so long exercised the power of excusing jurors for reasons
that have been deemed satisfactory, without its power to do so being question-
ed, that it must be regarded as firmly settled that the court has such power,
and that the exercise of it in the discretion of the court will not ordinarily be
revised."

The reason upon which these decisions are based is that when a
competent jury, composed of the requisite number of persons, has
been impaneled and sworn, the purpose of the law is accomplished;
that although, in selecting the jury, a competent person has been
rejected, yet, if another competent person has been selected in his
stead, no injury has resulted to the prisoner. It is certainly no
ground of error for the court even to be more cautious and strict in
securing an impartial grand jury than the law actually requires,
by rejecting a juror on grounds which might not be technically suf-
ficient to sustain a challenge for cause. Neither the government
nor the accused can complain, so long as an impartial jury is ob-
tained. Levy v. Wilson, 69 Cal. 111, 10 Pac. 272. Moreover, the
defendant and his counsel were present in court when the grand
jury was impaneled, and had the opportunity of taking objections
to the action of the court in excusing the grand jurors, or to object
to any other juror or jurors on the panel. When the court asked
the question whether they had any objections, none were made. If
there were any valid objections to the action of the court in excus-
ing jurors, or any objection to any grand juror on the ground of
prejudice, bias, partiality, ignorance, or incompetency, or other
cause, the defendant ought, in justice and fairness, to have brought
the same to the attention of the court before the jurors were sworn.
In Boulo v. State, 51 Ala. 19, where the provisions of the state
statute prohibited pleas in abatement to be filed on the ground of
the disqualification of any grand juror, the court said:

"There is no reason·for apprehending that, under our statutes, any right of
persons accused will be prejudiced by the selection and impaneling of an im-
proper grand jury. On the court is devolved the duty of ascertaining that
each juror possesses the requisite qualifications, as a preliminary to giving in
charge to the jury the duties they are required to perform. This duty the
court uniformly observes, thereby guarding against the introduction of per-
sons not fit or qualified to serve. Any person, as amicus curiæ, can suggest
the unfitness of any juror; and, if necessary, the court would hear evidence,
and determine the question."

See, also, Com. v. Smith, 9 Mass. 109; People v. Romero, 18 Cal.
93; U. S. v. Palmer, 2 Cranch, C. C. 11, Fed. Cas. No. 15,989; State
v. Easter, 30 Ohio St. 543.

The real contention ·of the defendant is that the court had no
power to' excuse any grand juror for any cause whatever, unless
he came within the disqualification or exemptions mentioned in

sections 3788, 4065, 3796, of the General Statutes of Nevada,—in other words, the court had no authority to excuse any juror, of its own motion, unless he was a minor, an alien, an insane person, or a prosecutor,—and that the state statutes furnished the only guide for the action of the court. If the first portion of the contention is correct, then it would follow that if the accused person, whose case was to come before the grand jury had been on the list drawn from the jury box, the court would have been compelled to accept him as a grand juror, and to have allowed him to act as a juror in all cases except his own. If 12 of the grand jurors had testified that they had formed and expressed opinions that the defendant was guilty, and that they should vote in favor of an indictment without hearing any further evidence, the court would have no power to excuse them, or either of them. If it was brought to the attention of the court, in a reliable manner, that one or more of the jurors had offered, in advance of being sworn, that he was willing to sell his vote, for any sum of money, to either party, the court would have no power, authority, or jurisdiction to excuse the juror. These illustrations are sufficient to show the absurdity of the defendant's contention. Such results would be utterly subversive of every principle of justice; would be contrary to the spirit and genius of free institutions; would be a reproach to any court that would permit such a practice to be pursued, and a dark blot upon the jurisprudence of any country. There is no law that gives an accused person the absolute right to have grand jurors accepted by the court who have formed and expressed unqualified opinions that he is innocent. There is no law, rule, or practice that compels the court to accept any grand juror to be on the panel who has formed and expressed the opinion that the accused is guilty. But, if such persons were selected without any objections being made, it would be no ground for setting aside the indictment. In State v. Hamlin, 47 Conn. 95, 114, cited and relied upon by defendant, the court said:

"The authorities which have been cited show conclusively that objections to grand jurors on the ground that they have formed and expressed opinions of the guilt of a person accused of crime, before they were impaneled and sworn, cannot be pleaded in abatement to the indictment."

The action of the court in the present case was strictly within the lines of the decisions of the supreme court of Nevada; but, even if it was not, it would not necessarily follow that any error had been committed. The state law is not absolutely controlling. U. S. v. Tallman, 10 Blatchf. 21, Fed. Cas. No. 16,429. In U. S. v. Benson, 12 Sawy. 477, 482, 484, 31 Fed. 896, Mr. Justice Field, in discussing objections to grand jurors raised by plea in abatement to the indictment, said:

"It is true that in considering objections to grand jurors, or to their action, the federal courts are not restricted to such as are specifically designated in the legislation of the state. The provisions of the statute passed to bring offenders against the laws to trial are not to be construed so as to defeat their purpose. The various proceedings prescribed are the means designed, not merely to protect the accused, but also to protect the public, and are to be enforced, on the one hand, so as to secure to the accused a full

and fair trial, and, on the other hand, so as not to prevent the punishment of crime. Notwithstanding, therefore, the federal courts require for their jurors similar qualifications with those of jurors in the state courts, and enforce like objections and challenges to them, they still have the power—and it is their duty to exercise it, either on their own motion, or on that of counsel—to enforce any other objections to jurors which, from their nature, if well founded, would necessarily unfit them to act. \* \* \* In all criminal proceedings the federal courts will so exercise their inherent powers that, so far as it is possible, notwithstanding the forms of procedure prescribed, the rights of the accused will not be impaired, nor the ends of justice defeated."

The apprehensions, therefore, of one of the learned counsel, as to the fearful consequences which may follow in other cases if the indictment be sustained in this case in the face of his objections, may be considered with composure and dismissed.

2. There are exceptional cases where an indictment might be quashed, or a plea in abatement sustained, on the ground of improper conduct upon the part of the grand jurors. If the grand jury required the accused to appear, and compelled him to be sworn and to testify touching the charge against him, the indictment might be set aside. State v. Froiseth, 16 Minn. 296 (Gil. 260). If a witness who was incompetent, or disqualified from giving evidence, under the law,—as, for instance, if the wife of the accused testified before the grand jury,—the indictment might be quashed. But it is only in rare and exceptional cases that motions to quash, or pleas in abatement, have been sustained by the court on the ground that illegal testimony was received by the grand jury. To permit an inquiry of this sort would open the door to great abuses. It would afford opportunity to tamper with the jury. It would lessen the respect due to the forms and solemnities of judicial proceedings.

"It could only be in a very clear case, where it could be made to appear manifestly, and beyond every reasonable doubt, that an indictment apparently legal and formal had not in fact the sanctions which the law and the constitution require, that the court would sustain a motion to quash or dismiss it, upon a suggestion of this kind." Low's Case, 4 Greenl. (Me.) 446.

In U. S. v. Terry, 14 Sawy. 49, 39 Fed. 355, Hoffman, J., said:

"An exception to the general rules of law, which forbid a record to be contradicted, a grand juror to disclose the proceedings of the jury, or to impeach its findings, will only be allowed in rare and extraordinary cases, and where the matters, if true, worked a manifest and substantial injury to the defendant, which the court, in the interest of justice, is bound to redress."

The general rule is, as stated in the authority last cited—

"That matters which contradict the record, or which are, if true, only provable by testimony of the jurors, who must be permitted to disclose what their terms of the oath and the general rules of law require them to keep secret, and the effect of which is to impeach their verdict, cannot be set up in a formal plea in abatement."

In the present case the motion to quash and plea in abatement are based solely upon information and belief. The sources of such information are not given. It is not even asserted that there was not sufficient competent testimony to authorize the finding of an indictment, but defendant does interpose his belief "that if the hearsay testimony, opinions, and statements of the witness Mason

had not been given, that no indictment would have been found." It is not claimed that Mr. Mason, who gave the testimony complained of, before the grand jury, was an incompetent or disqualified witness under the law. The only charges are that he gave some hearsay testimony; that he was not the legal custodian of certain books and documents which he had in his possession, and referred to in his testimony; and that he was an expert, and gave his opinions to the jury. No case has been cited which enunciates any principle of law that would authorize the court to set aside the indictment upon any such grounds. It is undoubtedly true that all investigations before grand juries ought to be conducted within the well-established rules of evidence, and the best evidence of which the case is susceptible ought to be presented, and hearsay testimony excluded. The grand jurors in the present case were directly charged by the court to only receive legal evidence, and to exclude hearsay, suspicions, or mere reports. They were also charged that, to justify the finding of an indictment, they should be convinced from the evidence presented to them that the accused person is guilty: "In other words, you ought not to find an indictment, unless you believe that the evidence presented to you, unexplained and uncontradicted, would warrant a conviction before a petit jury." It does not appear by any competent proof that any illegal evidence was received. But it may be assumed that grand jurors sometimes ask questions that might lead a witness to give some hearsay testimony. In State v. Logan, 1 Nev. 516, the court discussed this question at considerable length, and it was there stated that the admission of evidence not strictly legal will authorize the setting aside of an indictment is a proposition which seems to have no authority to sanction it, and, if adopted, "would only be an impediment to the execution of criminal justice; for it is evident that, under the present practice, not one indictment out of five could be found, where it could not be shown that some illegal proof was received." It was further stated that where there is the slightest legal evidence the court cannot inquire into its sufficiency, or set it aside, because some illegal evidence was received with it, and then announces the doctrine that "to authorize the setting aside of an indictment, even where there was no legal evidence at all to sustain it, that fact must appear by proof independent of the testimony of the grand jurors." If the state practice is controlling, as claimed by counsel, then it necessarily follows that the motion and plea, so far as this ground is concerned, should be denied. The general principles announced in State v. Logan have been, in one form or another, approved in a great number of decided cases. State v. Hamilton, 13 Nev. 389; Hope v. People, 83 N. Y. 419; State v. Fowler, 52 Iowa, 103, 2 N. W. 983; Creek v. State, 24 Ind. 152; State v. Fassett, 16 Conn. 457; U. S. v. Reed, 2 Blatchf. 466, Fed. Cas. No. 16,134; U. S. v. Brown, 1 Sawy. 531, Fed. Cas. No. 14,671. In State v. Hamlin, 47 Conn. 115, the court said:

"The allegations in that part of the defendant Davis' plea in abatement which is now under consideration could not, if they are true, be proved, except

by the testimony of the grand jurors themselves. The grand jurors could not have been allowed to give testimony in respect to them. * * * The demurrer to the plea cannot be allowed to operate as an admission of the truth of the allegations pleaded, or to have any other operation or effect than an objection or exception to the filing and allowance of the plea."

3. Section 1024, Rev. St. U. S., reads as follows:

"When there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments, the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

This statute leaves the question to the court to determine whether, in any given case, a joinder of two or more offenses in one indictment against the same person "is consistent with the settled principles of criminal law." Pointer v. U. S., 151 U. S. 396, 14 Sup. Ct. 410. It is evident that under this decision the joinder of the two counts furnishes no ground whatever in support of defendant's plea, or motion to quash. If it should appear at any time that by the joinder of the two counts the defendant might be embarrassed in his defense, the court would have the right to compel the prosecution to elect under which count it shall proceed. But it is apparent from the decision that the court is justified in forbearing at this time, before the disclosure of any facts, to compel an election by the prosecution between the two counts; and if, upon the trial, it should be developed that the accused was not embarrassed in his defense by the union of the counts in one indictment, and that none of his substantial rights would be in any manner prejudiced by the refusal of the court to compel the prosecutor to elect upon which of the counts he will proceed, the court will be justified in such refusal. Counsel, in my opinion, have failed to comprehend, to some extent, at least, the true meaning of section 1024. There are three separate subdivisions in the statute, under either of which authority is given to unite several counts in the same indictment: (1) When there are several charges against any person for the same act or transaction; (2) when there are several charges against any person for two or more acts or transactions connected together; (3) when there are several charges against any person for two or more acts or transactions of the same class of crimes or offenses. The arguments were principally directed to the third subdivision, whereas the case comes directly under the other two. The act or transaction, or acts and transactions, of which the defendant is accused, is the felonious taking from the United States mint at Carson of gold metal of the value of $23,000, the property of the United States, etc. There are two sections of the Revised Statutes which directly refer to such acts or transactions, under which the person guilty of any such act or acts is liable to punishment, under the provisions of which the present indictment was found. The first count is framed under the provisions of section 5456, which refers generally to all classes of cases where any person feloniously takes and carries away any kind or description of

personal property belonging to the United States, whether it is taken from the post office, the subtreasury, or the mint, or from any officer having in his possession any personal property of the United States. The punishment provided for in this section is "by a fine of not more than five thousand dollars, or by imprisonment at hard labor not less than one nor more than ten years, or by both such fine and imprisonment." The second count is framed under the provisions of section 5460, for the felonious taking and embezzlement of the metals at the United States mint which were committed to the defendant's charge. The punishment provided for in this section is imprisonment "at hard labor for a term not less than one year nor more than ten years," and a fine "not more than ten thousand dollars." These offenses were properly joined by separate counts in the same indictment. Upon the face of the indictment, the act or transaction of which the accused stands charged is the felonious taking from the mint of gold metal of the value of $23,000, the personal property of the United States, contrary to the provisions of the statute in such case made and provided. Whether under a general definition the language of the first count might be classed as larceny, and in the second as embezzlement, is immaterial. It is for the same act or transaction, or acts and transactions connected together. Numerous illustrations of the principles governing this class of cases might be found under the various provisions of the statute relating to offenses against the postal laws, the revenue laws, the custom laws, or laws against counterfeiting, etc. In all these, and many other, cases, there are various separate and distinct offenses which may, under the statute in question, and by the practice of the United States courts, be set forth in different counts in the same indictment, and the fact that the punishment is different for the offense mentioned in one or more counts from the others does not prevent all the offenses being set forth in separate counts in the same indictment. The defendant may be convicted upon one or all of such counts, and, if it appears to the satisfaction of the court that the counts upon which he is convicted relate to one act and transaction, then one general sentence may be given upon the indictment; and, if the sentence thus given is within the statute upon any count, it will be valid. If the defendant is convicted upon different counts relating to separate and distinct transactions or offenses, then sentence may be passed upon each count, or the court may pass sentence under one count, and suspend sentences on the others until the first sentence is executed. In Ex parte Hibbs, 11 Sawy. 459, 26 Fed. 421, the court said:

"In cases arising out of the same act or transaction, or two or more acts or transactions connected together, where there are several counts in the indictment, it will depend on the circumstances of the case whether, on a general verdict of guilty as charged in the indictment, the defendant may be sentenced to more than the maximum punishment for one of the offenses charged. But in the case of two distinct offenses, arising out of two distinct acts or transactions, however closely related in point of time or place, the trial is for distinct offenses, of which the defendant may be found guilty, and receive the maximum punishment for each. * * * The act authorizing the joinder of offenses in one indictment, and the consolidation of separate indictments for distinct offenses, was intended to promote the speedy

and economical administration of justice in such cases, in the interest both of the government and the defendant, and not practically to merge two or more distinct offenses into one, for the benefit of the latter."

The statute is much broader than any of the statutes of the respective states, so that the decisions cited under the statutes of different states have but little bearing upon the question at issue here. In U. S. v. O'Callahan, 6 McLean, 597, Fed. Cas. No. 15,910, the court said:

"A count for embezzlement on 39 Geo. III. c. 85, may be joined with a count for a larceny on 2 Geo. II. c. 25, because these offenses are felonies; and a count for embezzling bank notes upon 39 Geo. III. c. 85, may be joined with a count for larceny at common law."

And numerous English authorities are cited in support of this position. See, also, 1 Whart. Cr. Law, 978.

Touching the general question as to what counts may be united in one indictment, see Ingraham v. U. S., 155 U. S. 436, 15 Sup. Ct. 148; In re Lange, 13 Blatchf. 548, Fed Cas. No. 8,065; U. S. v. Stetson, 3 Woodb. & M. 164, Fed. Cas. No. 16,390; U. S. v. Burns, 5 McLean, 24, Fed. Cas. No. 14,691; U. S. v. Bennett, 17 Blatchf. 357, Fed. Cas. No. 14,572; U. S. v. Dickinson, 2 McLean, 325, Fed. Cas. No. 14,-958; U. S. v. Wentworth, 11 Fed. 53; U. S. v. Blaisdell, 3 Ben. 133, Fed. Cas. No. 14,608; People v. Bogart, 36 Cal. 245; Womack v. State (Tex. Cr. App.) 25 S. W. 772; Brown v. People, 39 Mich. 37.

4. The indictment contains a sufficient description of the property alleged to have been stolen and embezzled from the United States mint. All that is necessary, in this respect, is that the property must be described with sufficient certainty to enable the court to determine that the property is, in law, the subject of the crimes alleged in the indictment, and to enable the jury to discern that the property proved to have been feloniously taken is the same which is mentioned in the indictment. In Dunbar v. U. S., 156 U. S. 185, 191, 15 Sup. Ct. 325, the description of "prepared opium, subject to duty by law, to wit, the duty of $12 per pound," was held sufficient in an indictment for smuggling. In the course of the opinion the court said:

"The rule is that if the description brings the property in respect to which the offense is charged clearly within the scope of the statute creating the offense, and at the same time so identifies it as to enable the defendant to fully prepare his defense, it is sufficient."

See, also, U. S. v. Claflin, 13 Blatchf. 178, Fed. Cas. No. 14,798, which was an indictment for smuggling, and the language used to identify the goods, and which was held sufficient, was as follows: "Certain goods, wares, & merchandise, to wit, a large quantity of silk goods, to wit, six cases containing silk goods, of the value of $30,000."

The following (among other) descriptions of personal property have been held sufficient in indictments for larceny: "One watch," without stating whether it was gold, silver, or brass. Williams v. State, 25 Ind. 150. "Three head of cattle," without stating the particular species. People v. Littlefield, 5 Cal. 355. "One book," without stating its title or character. State v. Logan, 1 Mo. 532; Turner v. State,

102 Ind. 426, 1 N. E. 869. Numerous other authorities might be cited of like import.

The request to call grand jurors for the purpose of giving testimony is refused, motion to quash indictment denied, plea in abatement dismissed, and demurrer to indictment overruled.