### In re SHAW.

### In re McLAUGHLIN.

(Circuit Court, S. D. New York. January 22, 1909.)

**1. Witnesses (§ 11\*)—Grand Jury (§ 36\*)—Federal Courts—Subpœna.**

Under Rev. St. § 877 (U. S. Comp. St. 1901, p. 667), read in connection with section 829 (page 636), providing for the attendance of witnesses by subpœna, the names of as many witnesses in the same cause as convenience of service will permit are to be included in one subpœna, requiring the witnesses to attend and testify generally, i. e., either before the grand jury or petit jury, or both.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 11;\* Grand Jury, Dec. Dig. § 36.\*]

**2. Grand Jury (§ 36\*)—Witnesses—Subpœnas—Form.**

A subpœna compelling witnesses to appear and testify before a federal grand jury must either disclose the name or names of the persons against whom the inquiry is instituted, or the subject of the investigation.

[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 36.\*]

Applications for Orders Quashing Subpœnas.

De Lancey Nicoll and John M. Bowers, for petitioners.
Henry L. Stimson, U. S. Atty.

WARD, Circuit Judge. This is a motion to quash and set aside subpœnas served on witnesses Shaw and McLaughlin; the subpœna ticket being in the following form:

"U. S. Grand Jury: By virtue of a writ of subpœna to you directed and herewith shown, you are commanded and firmly enjoined that laying all other matters aside, and notwithstanding any excuse, you be and appear in your proper person before the grand inquest of the body of the people of the United States of America for the Southern district of New York at a Circuit Court to be held at the United States Court and Post Office Building, room 119, fourth floor, in the city of New York in and for the said Southern district on the 18th day of January, 1909, at 10:30 o'clock in the forenoon of the same day, to testify all and everything which you may know generally on the part of the said United States. And this you are not to omit under the penalty of two hundred and fifty dollars.

"Dated this 4th day of January, 1909.

"By the Court, Henry L. Stimson, U. S. Attorney."

There were struck out of the printed form used the words "to give evidence in a certain cause now depending in the said court between the United States of America and," and the word "generally" substituted.

The statutory form of subpœna in the state of New York (section 612, Code Cr. Proc.) contains a similar provision to the one struck out, viz., to appear "as a witness in a criminal action prosecuted by the people of the state of New York against."

The form of subpœna in the federal courts is not prescribed by law. The only regulation on the subject is section 877, Rev. St. U. S. (U. S. Comp. St. 1901, p. 667), which, as Judge Hughes explained in the note to United States v. Ralston (C. C.) 17 Fed. 901, is to be read in connection with section 829 (page 636). So read, it is to be construed

as requiring for the purpose of economy that the names of as many witnesses subpœnaed in the same cause as convenience in serving the same will permit shall be included in one subpœna requiring the witnesses to attend and testify generally, i. e., either before the grand jury or the petit jury, or both, as they may be required by the court or the district attorney.

The form used in this district indicates at least a general intention that a witness shall be informed of the matter about which he will be called upon to testify. I think it is proper that he should be. The fifth amendment to the Constitution provides that no one "shall be compelled in any criminal case to be a witness against himself." The Supreme Court has construed this provision largely holding that it is not confined to a criminal case against the witness himself, but extends to any criminal investigation. Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110.

It is quite clear that the ordinary citizen called upon to testify in the strange environment of the grand jury room under the interrogation of the United States attorney will be quite unable to assert his rights, even if he knows what they are. He ought to have an opportunity to consult counsel and be advised of the extent of his right to refuse to testify, and of the way in which to protect himself against giving testimony that might incriminate him.

The United States attorney contends that in this country the grand jury has an inquisitorial power to investigate of its own motion, and that in some instances the utmost secrecy may be necessary to the success of its inquiry, and that the protection of witnesses may safely rest on the presumption that neither the grand jury nor the United States attorney will do anything unfair or oppressive.

It would also contribute greatly to the success and celerity of some investigations if the authorities had an unlimited right to search and seize persons, houses, and papers; but the right of the citizen against such proceedings is not left to depend upon any such presumption. He is guaranteed against unreasonable searches and seizures by the fourth amendment to the Constitution. So it would unquestionably speed the detection and conviction of crime to compel suspected persons to testify; but no principle of our law is better settled than that this cannot be done.

The subpœna being the court's writ, it is the duty of the court, consistently with existing statutes, to regulate the use of it. It is not a question of the nature of the particular subject now under consideration by the grand jury nor of the fairness of the present United States attorney and his assistants and of the present grand jury; but the question is to determine the practice to be followed in this district in all cases by all United States attorneys and grand juries, a matter concededly of the utmost moment.

It is pointed out that the grand jury may often be unable to name any person as connected with the subject that it is investigating of its own inquisitorial power, and, if it cannot subpœna witnesses without naming some person, the inquiry must be altogether abandoned. I think the answer to this is that it can in such a case state in the subpœna the subject of its inquiry and so fix some definition of and limit

to the examination to which the witness may be subjected. This was done in the subpœna issued out of this court in the case of United States v. Kimball (C. C.) 117 Fed. 156. It must be admitted that there is a strange absence of authority upon the subject; but Justice Brown, in Hale v. Henkel, 201 U. S. 43, 65, 26 Sup. Ct. 370, 375, 50 L. Ed. 652, said:

"We deem is entirely clear that under the practice in this country, at least, the examination of witnesses need not be preceded by a presentment or indictment formally drawn up, but that the grand jury may proceed, either upon their own knowledge or upon the examination of witnesses, to inquire for themselves whether a crime cognizable by the court has been committed, that the result of their investigations may be subsequently embodied in an indictment, and that in summoning witnesses it is quite sufficient to apprise them of the names of the parties with respect to whom they will be called upon to testify, without indicating the nature of the charge against them."

This language indicates that the Supreme Court thinks that witnesses should be informed in the subpœna of the names of the parties with respect to whom they will be called to testify, although it holds it not necessary to disclose the charge brought against those persons. It must be remembered that Justice Brown was discussing the demand of a witness who has been subpœnaed to testify in a case against named persons, to know the specific charge made. It is quite in line with his view that, if the witness cannot be apprised of the name of the person so charged, he should be informed of the subject about which he will be called upon to testify.

It is alleged that these general or John Doe subpœnas have been issued in this district for many years. If so, they seem never to have been challenged. As Justice Bradley pointed out in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, a long practice of issuing general warrants to apprehend persons suspected of the authorship of seditious libels and bring them and their papers before the Secretary of State for examination was relied on in Emtick v. Carrington, 17 Howell's St. Tr. 1029. Lord Camden said:

"As no objection was taken to them upon the returns (to writs of habeas corpus) and the matter passed sub silentio, the precedents were of no weight."

A subpœna duces tecum was also served upon Shaw as secretary and treasurer of the Press Publishing Company, World Building. It was held in Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, that a subpœna duces tecum might amount to an unreasonable search or seizure within the fourth amendment to the Constitution. The United States attorney consents that its terms in this case may be narrowed to an extent which seems to make it reasonable. Still the fact remains that the witness has been subpœnaed to testify generally, and that he is entitled to know either what person or persons are charged by the United States, or the subject of the investigation. I do not think that the incidental reference to articles relating to the Panama Canal in the paragraph of the subpœna called for receipts is sufficient.

The motion to quash and set aside the subpœnas is therefore granted.