## THE UNITED STATES OF AMERICA *vs.* CARL ON TAI

### March 19, 1910.

*Indictment—Examination of defendant before grand jury:* An indictment will not be quashed because, in the course of an investigation by a grand jury, the person subsequently indicted was subpoenaed and examined as a witness and gave self-incriminating testimony, where he knew, in at least a general way, what matter was being investigated, and was clearly advised of his right to decline to answer questions which might tend to incriminate him.

*Same—Practice:* The calling and examining of the accused under the circumstances shown in the opinion, disapproved.

*Criminal Law:* Motion to quash indictment.

*R. W. Breckons,* U. S. District Attorney, for the United States.

*Magoon & Weaver,* for the Defendant.

ROBERTSON, J.   The defendant has been indicted upon a charge of feloniously purchasing from a soldier employed in the military service of the United States, who had no lawful right to sell the same, certain public property of the United States.

The defendant moved to quash the indictment "for the reason that the said Carl On Tai was summoned before the grand jury to give testimony in the matter of the sale of the garments mentioned in the indictment, and to give evidence therein tending to incriminate him on said charge."

The motion was supported by the affidavit of the defendant, and the district attorney filed a counter affidavit.   A hearing was had upon the motion at which the defendant, the district attorney, and the foreman of the grand jury gave evidence.

The defendant testified that the United States marshal came to his house and asked him to take a ride with him; that, thinking he was under arrest, the defendant asked the marshal if he could see his attorney first; that the marshal replied that there was no need of that as he was not under arrest; they then got into a carriage and the marshal showed the defendant a subpoena telling him he was wanted as a witness by the grand jury; that two soldiers accompanied the marshal, and they all drove to the court house where the grand jury was in session; that he was taken before the grand jury and sworn; that the district attorney then told him that he need not answer any question if he did not want to and that he had the right to refuse to answer any question; that the foreman asked him if he understood it, and he replied in the affirmative; that he thought to himself "I am brought here to answer before the grand jury what I know about it"; that he answered all questions which were put to him; that he was not told, or led to believe, that there was any criminal charge in contemplation of being brought against him; that he did not understand that his conduct was under investigation.   But to the question, "Did the marshal state to you the nature of the testimony that was wanted from you?" the defendant replied, "He said I was wanted by the grand

jury, and by the appearance of the two soldiers that was with him tell me what I was wanted for." And in reply to the question, "Did he tell you what you were wanted for or did he not?" he said, "He said I was wanted by the grand jury but by the appearance of the two soldiers with him, just the same as telling me what I was to testify."

The defendant does not speak English very well, but I think he intended, by those two answers, to convey the idea that the presence of the two soldiers with the marshal (together perhaps with the fact of the finding of the clothing) indicated to him in at least a general way, what the nature of the inquiry being had was, and what he was to be asked about.

It appears that he was examined in considerable detail in regard to the purchase of the property in question, and gave evidence tending to support the charge. It also appears that when the marshal and the soldiers went to the defendant's house they found certain blankets and articles of underclothing which were taken thence to the grand jury room.

Mr. Breckons, the district attorney, testified that when the defendant was taken before the grand jury he was told that the matter of the purchase of this clothing was being investigated; that his conduct in purchasing it was also being investigated; and that he had a perfect right to refuse to answer questions if he did not want to answer them. He also stated that the indictment was drawn about a week later.

The statement of the district attorney that the defendant's conduct in purchasing the clothing was being investigated, though no doubt made, was probably not given in a manner calculated to impress itself on the defendant, as even the more intelligent foreman had no recollection of having heard it.

Mr. Watkins, the foreman of the grand jury, testified that the investigation into the matter of the sale of clothing by United States soldiers was started upon a complaint made to the district attorney by the military authorities at Fort Shafter; that upon the testimony of Lieutenant Pardee, who was called before the grand jury, it appeared that there was cause for an

investigation; that a non-commissioned officer and two privates were then called and gave testimony which implicated the defendant; that upon their testimony the grand jury was ready to vote a true bill against the defendant; that the defendant was then sent for and examined under oath; that before being questioned the defendant was warned that he did not have to answer questions; that at about that time the clothing in question was brought in. On being asked whether the defendant had been informed that his conduct was being investigated, the witness said "No, I don't believe that he was told in so many words that his conduct was being investigated." The witness also said that he thought from the way in which the defendant ·gave his testimony that he was conscious that an indictment might be brought against him.

The subpoena ticket which was handed to the defendant reads as follows:

"To CARL ON TAI, Honolulu. By virtue of a subpoena issued out of the United States District Court, you are required to be and appear before the said court at Honolulu, forthwith, at ...... o'clock ...... m., on the 27th day of January, 1910, then and there to testify on behalf of the United States in the case of investigation before grand jury, and not to depart without leave. If you fail to obey such subpoena, you may be fined and imprisoned, as the court may direct.

E. R. HENDRY,

U. S. Marshal."

There was nothing in the subpoena to inform the defendant of the nature of the inquiry then pending before the grand jury. The form used was, under the ruling made in the case of *In re Shaw,* 172 Fed. 520, insufficient. The court in that case held that a witness "is entitled to know either what person or persons are charged by the United States, or the subject of the investigation."

A person who, when called as a witness, has no idea of the subject of inquiry, may not be able to say whether a particular question does or does not tend to incriminate him.

The Fifth Amendment provides that, "No person * * * shall be compelled in any criminal case to be a witness against himself."

The United States Supreme Court has held that this provision, which reiterates the well known principle of the common law, that no one is bound to accuse himself, was designed to insure that a person should not be compelled, as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime, and that it applies to proceedings before a grand jury.

*Counselman v. Hilchcock,* 142 U. S. 547;

*Brown v. Walker,* 161 U. S. 591.

In holding to the contrary, the court in the case of *United States v. Price,* infra, overlooked the distinction between the phrase "criminal proceedings" as used in the statute involved in the case of *Post v. United States,* 161 U. S. 583, and "criminal case" as used in the Fifth Amendment to the Constitution. See *United States v. Patterson,* 150 U. S. 65.

It is well settled that the mere admission of incompetent evidence in a proceeding before a grand jury will not vitiate an indictment if there was also some competent evidence before the jury. But where the incompetent evidence was that of the defendant himself, the circumstances under which it was elicited become important when the indictment is assailed on the ground that the defendant was called as a witness.

An examination of the decided cases bearing upon the question involved in the case at bar shows that a great diversity of opinion exists among the courts, and that it would be impossible to reconcile some of the cases.

Among the cases which have been examined, in which, under varying circumstances, indictments were quashed or set aside because of the fact that the accused had been examined before the grand jury, are the following: *People v. Haines,* 1 N. Y. S. 55; *People v. Singer,* 18 Abb. N. C. 96; *State v. Froiseth,* 16 Minn. 260; *United States v. Edgerton,* 80 Fed. 374; *Boone*

v. People, 148 Ill. 440; State v. Faulkner, 175 Mo. 546; State v. Gardner, 88 Minn. 130; also the cases of People v. Steinhardt, 93 N. Y. S. 1031; In re Morse, 87 N. Y. S. 721; United States v. Farrington, 5 Fed. 343; and United States v. Jones, 69 Fed. 973, wherein the subject was discussed. Among the cases in which, on the other hand, indictments were under circumstances more or less similar to those involved in the cases above mentioned, sustained, are the following: United States v. Brown, 1 Sawyer, 531; United States v. Kimball, 117 Fed. 156; United States v. Price, 163 Fed. 904; People v. Lauder, 82 Mich. 109; State v. Donelon, 45 La. Ann. 744; People v. Willis, 52 N. Y. S. 808; State v. Comer, 157 Ind. 611; State v. Trauger, (Iowa) 77 N. W. 336; and State v. Duncan, 78 Vt. 364.

The divergent lines of thought which are to be found in an examination of this question are well exemplified in the case of People v. Lauder, supra, where it appears that the grand jury was investigating certain charges of bribery against the defendant, and after several witnesses had been examined, the accused was summoned, and without knowing or being informed of the nature of the investigation, and without being advised of his right to refuse to answer questions, or given an opportunity to consult counsel, he was interrogated fully as to the details and circumstances of the matter, and gave evidence against himself. Champlin, C. J., speaking for the majority of the court, said, "As before observed, there was no violation of Lauder's constitutional rights in compelling him by subpoena to attend before the grand jury, nor in administering an oath to him. The real complaint made by the plea is that Lauder was subpoenaed to appear before the grand jury, and he appeared in obedience thereto; that he was sworn, was interrogated, and answered all questions. He states that all this was done without having the aid and advice of counsel, and because he did not have the assistance of counsel to bring out all the facts and circumstances of the case he testified to facts material and necessary to prove the truth of the charges. As he

was not upon trial for any offense, no exception can be taken to his not having the assistance of counsel; and, as he made no objection to testifying on account of privilege, I do not see why that should be appealed to as a ground for quashing the indictment." Speaking for the minority, Morse, J., said, "In dealing with the principle here involved, we are to establish a precedent in this State for all time to come, which shall govern and operate against all men alike, the ignorant as well as the learned. Courts cannot inquire in any or each particular case what the intelligence of the accused is, or presume that, because of a superior grade of intelligence, one man knows his right when another does not. There is no necessity anywhere, and never can be under any circumstances, that the law should be stretched to make an accused person testify against himself in a criminal case; and, when force and deception are combined to attain such an end, the courts must see to it that his rights are restored, notwithstanding popular clamor or supposed necessity is invoked to justify his deprivation of constitutional privileges. * * * It is suggested with much force by his counsel that, if there was testimony sufficient to indict him without his evidence, why was he subpoenaed and sworn unless it was to complete the chain against him, by the furnishing of a missing link out of his own testimony. * * * If the indictment is not quashed, the accused person has no remedy, and is put upon trial through a violation and open disregard of one of his most valued rights. On principle, I do not see how such an indictment can stand. It is founded necessarily upon the violation of a constitutional right, which the law never permits in any case."

Were the facts in this case like those in that case I would be strongly inclined to adopt the reasoning of the minority opinion.

One of the best considered opinions is that of Judge Thomas in *United States v. Kimball,* supra, wherein the reasoning leads to the disapproval of some of the extreme views expressed in each of the two lines of cases. In that case it appears that the grand jury was investigating the matter of the failure of a cer-

tain bank with the object of discovering whether or not its affairs had been conducted lawfully. In the course of the investigation, seventeen witnesses were examined, including Kimball and his co-defendants. The defendants, before they gave their testimony, were apprised of the nature of the investigation which was being conducted by means of the subpoena with which they had been served; they either had legal advice or an opportunity to consult counsel; and two of the three were advised by the United States attorney of their right to refuse to answer questions which might tend to incriminate them. The motion to quash the indictments was denied. It was there held that the mere fact that a person subsequently indicted was subpoenaed before the grand jury and compelled to take the usual oath is not an infringement of his constitutional right not to testify against himself, and that persons who give evidence under such circumstances as appeared in that case must be considered to have testified voluntarily and without any compulsion. The court said, *inter alia,* "Compulsion need not be through legal proceedings, wherein the witness is directed to testify by order of the court. Any unlawful action by the district attorney, or by the jury, or other official, that should appear to have impaired the exercise of the free will of the witness in choosing whether he would testify, should be regarded as compulsion. In certain cases it may be immaterial whether such action be regarded as an infringement of the constitutional provision, or an unseemly perversion of the just administration of the law. The court should in either case have inherent power to redress the wrong. * * * Cases have undoubtedly arisen where persons have been called to give evidence under such circumstances of ignorance of law, fact, and the occasion of their presence as to amount to misconduct on the part of the grand jury or prosecuting officer in using the same as a basis for indictment, and such instances will arise in the future. Then the courts will meet the facts according to their deserving." It was also said, "that grand juries are privileged to seek for information from persons most likely to be

conversant with the matter under investigation, and are not compelled warily and assiduously to shun such persons, lest it happen that an indictment should in the end be found against them.  The theory of limiting grand juries to questioning persons disconnected with a ruined bank as to the cause thereof, in timorous expectation that a less remote search might chance to bring the persons guiltily concerned into the presence and under the examination of the jury, is not consonant with that vigor of inquiry that such exigencies demand.  The persons whose duties converged at such bank would be those who should know, and it is of these persons that an investigating grand jury should inquire, not of those who, isolate from its affairs, would be presumed to have no knowledge.  While much is due to the conservation of personal rights, the administration of justice should not be fettered by a sentimentality that would paralyze efficient action.  The status of persons arrested, legally charged with crime, or objects of complaint before a court, officer, or grand jury, may justify a presumption that such persons gave evidence under compulsion; but witnesses otherwise competent, who are subject to none of these disadvantages, should be exposed to the usual summons to aid in the investigation of offenders, and to the common responsibility and peril of knowing what incriminating evidence they should withhold.  What should be done in cases, if such should arise, where there is ignorance amounting to helplessness, or unconsciousness of the matter under investigation resulting in a denial of the opportunity for self-exemption, is an important consideration, unconnected with the matter at bar."

And in *State v. Trauger,* supra, although the motion to quash the indictment was denied, the court said, "Nothing that we here say should be construed otherwise than as an unqualified disapproval of the act of the grand jury in bringing the defendant before it, on its own motion."

From the weight of authority and reason, gathered from the cases cited, I deduce that an accused person may, upon his own motion and request, be permitted to make a statement and sub-

mit to cross examination before a grand jury concerning the subject of investigation or charge, though it may tend to incriminate him, without in any way invalidating the indictment subsequently found against him (*People v. Willis,* supra); that no person can lawfully be compelled to give evidence against himself in any proceeding before a grand jury, and if it is shown that a defendant has been compelled to so give evidence the indictment will be quashed or set aside upon proper application (*United States v. Jones,* supra, *State v. Gardner,* supra); that if a person under arrest upon a criminal charge is taken before a grand jury and subjected to an examination, the indictment will be invalidated, compulsion being presumed from the situation and condition of the accused (*Boone v. People,* supra, *People v. Singer,* supra); that where some subject is being investigated by the grand jury for the purpose of ascertaining whether a crime has been committed, but no particular person is charged or suspected, and witnesses are called and examined, it is not necessary that they should be cautioned against self-incriminating testimony (*United States v. Kimball,* supra); that where the acts or conduct of a particular person, who is under suspicion, are being inquired into, and that person is called as a witness, he should be apprised of the fact that he is under fire, and advised as to his right to refuse to answer questions which may tend to incriminate him (*United States v. Edgerton,* supra, *United States v. Kimball,* supra, *State v. Faulkner,* supra); and that where the nature of the case and the circumstances under which the witness is brought before the grand jury are such as to apprise him that his own acts are involved in the investigation, he need not be told expressly that he is being investigated. If he is not under restraint at the time, it is enough that he is given clearly to understand that he may refuse to answer any and all incriminating questions (*United States v. Edgerton,* supra, *United States v. Kimball,* supra).

It is not necessary, I think, in a case of the class last mentioned that the grand jury be engaged in the examination of a

case where the accused has had a preliminary hearing upon a formal charge, nor that an indictment has previously been prepared and submitted to the jury.

I infer that circumstances may be such that a person may be regarded as being in the position of one charged with the commission of a crime though no written accusation against him has been made or filed, such, for instance, as in the case at bar, where, at the time the defendant was called to testify, the grand jury was prepared, upon the testimony previously heard, to find an indictment against him. See *Hale v. Henkel,* 201 U. S. 43.

I do not hesitate to express my disapproval of the calling of the defendant in this case before the grand jury under the circumstances shown. It is difficult to understand why, after the jury was ready to vote a true bill against him, he was summoned at all, but, having been sent for, the fact that his conduct was being investigated should have been clearly explained to him and, to have been absolutely fair, an opportunity should have been given him to consult with counsel, even though he was not entitled to the assistance of counsel as he would be if on trial. But in view of the fact that he had a general idea of the subject of investigation, derived from the surrounding circumstances, and must have known that he was at least under some suspicion, in connection with the alleged purchase of clothing and that he was, as he admits, fully advised of his right to refuse to answer questions, it can hardly be said that he was compelled to give evidence against himself.

The motion is, therefore, denied.

---

*Affirmed on Appeal from Final Judgment*: See *Carl On Tai v. The United States,* 188 Fed. 310.